AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Z.B., a minor, and J.B., a minor, by their guardian<br>S.S., and S.S., an individual<br><br>_____<br>*Plaintiff(s)*<br>v.<br>DELTA AIR LINES, INC.; BRIAN PATRICK<br>DURNING; AND DOES 1 through 5, inclusive<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  2:24-cv-02178

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Brian Patrick Durning, Inmate #07785-510
FCI
5756 HARTFORD & POINTVILLE RD
Fort Dix NJ  08640

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   José-Manuel A. de Castro, De Castro Law Group, P.C., 7509 N. Glenoaks Blvd., Suite 201, Los Angeles, CA 91504; jmdecastro@decastrolawgroup.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)
    *Jessica.Buckwalter@lbkmlaw.com*
1050 K Street, NW, Suite 400
Washington, DC 20001
Tel: (202) 833-8900; Fax: (202) 466-5738

Adam Kaufmann (*pro hac vice* admission pending)
    *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)
    *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Floor
New York NY 10017
Tel.: (212) 826-7001; Fax: (202) 826-7146

**AGNIFILO LAW GROUP, APC**
Karen Agnifilo (*pro hac vice* admission pending)
    *karen@agnifilolaw.com*
256 5th Avenue, New York, NY 10001
Telephone: (646) 596-2919

**DE CASTRO LAW GROUP, P.C.**
José-Manuel A. de Castro (SBN 213769)
    *jmdecastro@decastrolawgroup.com*
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504
Tel.: (310) 270-9877; Fax: (310) 341-2330

Attorneys for Plaintiffs

**Electronically FILED by
Superior Court of California,
County of Los Angeles
1/30/2024 10:26 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Horan, Deputy Clerk**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

### [UNLIMITED CIVIL]

| | |
|---|---|
| Z.B., a minor, and<br>J.B., a minor, by their guardian, S.S., and<br>S.S., an individual,<br><br>        Plaintiffs,<br><br>        vs.<br><br>DELTA AIR LINES, INC.;<br>BRIAN PATRICK DURNING;<br>and DOES 1 through 5, inclusive,<br><br>        Defendants. | **CASE NO.:**  24TRCV00333<br><br>**COMPLAINT FOR:**<br>1. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>2. **GROSS NEGLIGENCE;**<br>3. **NEGLIGENCE;**<br>4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>5. **VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200;**<br>6. **ASSAULT;**<br>7. **SEXUAL BATTERY (CIVIL CODE § 1708.5);**<br>8. **BATTERY; AND**<br>9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Z.B. and J.B., by S.S., their guardian, and Plaintiff S.S., individually, by and through their attorneys, Lewis Baach Kaufmann Middlemiss PLLC, Agnifilo Law Group, APC, and De Castro Law Group, P.C. allege as follows:

## PRELIMINARY STATEMENT

1.     This case arises out of the horrific sexual assault of a thirteen-year-old child during an overnight Delta Air Lines, Inc. (referred to herein as "Delta") flight from Los Angeles, California, to Orlando, Florida. What was intended as a joyful family trip turned into a life-altering, traumatic experience for a young teenager and every parent's worst nightmare. Defendant Brian Patrick Durning's (referred to herein as "Durning") sexual assault of the minor child was enabled by Defendant Delta's conduct of allowing a visibly intoxicated Durning to board the flight and continuing to serve him alcohol during the flight in violation of the law and Delta's policies and procedures. After Delta became aware of the sexual assault, Delta caused the plaintiffs to suffer further trauma and harm by forcing the minor to stay in the seat where the assault took place, seating Durning near his victim and her family, allowing Durning to roam freely about the airplane where he taunted and harassed them and, as a final indignity, allowing him to retrieve his luggage from the compartment directly above them and further taunt them as he deplaned. Delta committed these acts and omissions while being aware of the well-documented prevalence of in-flight sexual assaults, and the heightened risk of such assaults on red-eye flights.

2.     On or about June 23, 2022, two minor children Plaintiff Z.B. and Plaintiff J.B., and their mother, Plaintiff S.S. (together, referred to herein as "Plaintiffs") boarded Flight 2954 operated by Delta (referred to herein as the "Flight") at Los Angeles International Airport (referred to herein as "LAX"), for a red-eye flight that was to land on or about June 24. 2022 at Orlando International Airport (referred to herein as "MCO").  Plaintiffs were looking forward to a vacation to visit grandparents and other extended family after spending years apart due to the Covid-19 pandemic. Plaintiffs trusted Delta to uphold its duty as a common carrier to provide a safe flight for its passengers. Delta not only failed to meet that duty, but it also created a danger to Plaintiffs by allowing Durning to board the Flight in a visibly intoxicated state and continuing to serve him alcohol during the flight. Thereafter, and while in flight, Durning sexually assaulted Plaintiff Z.B. After Delta agents were made aware of the sexual assault, Delta continued to create a danger to Plaintiffs by failing to restrain Durning or move him to the back of the plane. As a result of

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

Delta's actions and inaction, Durning continued to taunt and harass Plaintiff Z.B. and her family during the remainder of the flight and deboarding process. This lawsuit seeks to hold Delta and Durning accountable for their reprehensible conduct.

3.       Plaintiff Z.B. is 14 years old (13 at the time of the flight), and Plaintiff J.B. is 16 years old (15 at the time of the flight). Plaintiff Z.B suffers from selective mutism, a type of anxiety disorder that renders her mute in certain situations, particularly when she is nervous, anxious, or afraid. Plaintiff J.B. has a rare chromosome disorder called Trisomy 8 Mosaicism, Autism Spectrum Disorder, and intellectual disabilities. Plaintiff Z.B. was seated apart from Plaintiff S.S. and Plaintiff J.B., in the middle seat between two strangers, one of whom was Durning.

4.       Taking advantage of the red-eye flight where the lights were dimmed and most of the passengers were sleeping, Durning touched Plaintiff Z.B. repeatedly, told her that he would take her to Texas and that she would never see her family again, and repeatedly sexually assaulted her. Plaintiff Z.B. was petrified and, because of her selective mutism, unable to call for help. She tried to move away from Durning in her seat but was unable to escape his physical assault. Unable to escape, and unable to call out for help, she could only sit in her seat petrified with fear as Durning groped and sexually assaulted her while touching his genitals. When the passenger sitting on the other side of Plaintiff Z.B. (referred to herein as the "Female Passenger") woke up, she saw Durning's hand moving away from Plaintiff Z.B.'s thigh. The Female Passenger demanded Durning stop his assault, alerted the flight attendant to what was happening, and sought Delta's intervention. When Durning stood up, his trousers were unzipped.

5.       Delta did not restrain Durning or move him to the back of the plane. Instead, they moved him to an aisle seat two rows ahead of Plaintiffs and diagonally across from them – a seat from which he continued to harass Plaintiffs. Unrestrained, Durning was free to, and did, roam about the cabin for the remainder of the Flight. Durning continued to harass the Plaintiffs, including grabbing and shaking his genitals while looking at the Plaintiffs. He also inappropriately touched the new passenger sitting next to him. After the flight landed, Delta did not restrain Durning or arrange for law enforcement to escort him off the plane. Instead, Delta allowed Durning to continue to taunt the Plaintiffs as he retrieved his luggage, and then to stand at the gate after deplaning, yell and throw his phone on the ground, and touch his genitals over his trousers while staring at Plaintiff Z.B. as she walked off the jetway.

6.      The Plaintiffs' lives have been devastated by Delta and Durning's actions. Plaintiff Z.B. struggles emotionally and physically with the effects of Durning's assault and conduct, enabled by Delta. Plaintiff Z.B.'s anxiety disorder has been severely exacerbated, and she suffers from Post-Traumatic Stress Disorder, depression, and panic attacks. She suffers from frequent nausea, is afraid of flying, has recurring nightmares about the incident, and does not want to sleep alone. Her trauma has also manifested in self-harm, including self-destructive cutting of her body, and she has developed several tics since the incident. Plaintiff Z.B. refuses to wear a bathing suit or shorts since the incident and no longer hugs family members. She fears that a man will do something to her whenever she is out in public. She has become combative with her parents and has reacted negatively to her father touching her on the shoulder. Formerly an excellent student and popular classmate, she now struggles academically, does not want to go to school and has isolated herself socially. Plaintiff J.B. suffers from severe anxiety about his sister's safety, school, and changes to his routine, and is afraid of flying, male strangers and his friends' fathers, and crowds. He has needed a one-on-one aide at school since the incident. Plaintiff J.B. suffers from nightmares from the incident and refuses to change in front of others for physical education class. He has become afraid of dark public spaces such as movie theaters and refuses to go to places outside of school or home without his mother. Plaintiff S.S. also suffers from constant anxiety about the safety and health of her children, depression, insomnia, and recurring nightmares of the incident. She struggles with everyday tasks including going to work, and the mental and emotional impact of the incident has significantly strained her marriage.

## **THE PARTIES**

7.      Plaintiff Z.B. is a minor child of S.S. and is 14 years old. Plaintiff Z.B. is a resident of Los Angeles County, California and is a high school student. She suffers from selective mutism, a form of anxiety disorder that renders her mute in certain situations, particularly when she is nervous, anxious, or afraid.

8.      Plaintiff J.B. is a minor child of S.S. and is 16 years old. Plaintiff J.B. is a high school student in a special education classroom. Plaintiff J.B. has Autism Spectrum Disorder, a rare genetic disorder called Trisomy 8 Mosaicism, and intellectual disabilities. Plaintiff J.B. is a resident of Los Angeles County, California.

9.      Plaintiff S.S. is a resident of Los Angeles County, California, and mother to Z.B. and J.B. Plaintiff S.S. works in Los Angeles County, California.

10.     Defendant Delta Air Lines, Inc. is a major air carrier that provides scheduled air transportation for passengers and cargo throughout the United States and around the world. Delta operates a large domestic and international route network and has several "hubs" across the United States, including LAX, the starting point of the Flight. Delta is a corporation organized under the laws of the state of Delaware, headquartered in Atlanta, Georgia, and regularly and systematically conducts business in the State of California, including Los Angeles County, California. At all relevant times, Delta owned, possessed, and/or controlled the Flight whereon the acts described herein occurred.

11.     Defendant Durning was a passenger on the Flight on or about June 23 to on or about June 24, 2022 from LAX to MCO. Durning is a resident of Los Angeles County, California.

12.     Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1 through 5, inclusive, and therefore sues those Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiffs will amend this Complaint to state the true names and capacities of the fictitiously named Defendants when those names are ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is legally responsible in some manner for the events and damages alleged in this Complaint under the causes of action alleged herein.

13.     Plaintiffs are informed and believe, and thereon allege, that Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or were acting in the course and scope of such agency, partnership, joint venture, association and/or employment when the acts giving rise to the causes of action occurred.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction to hear the subject matter of this complaint because it has general subject matter jurisdiction and no statutory exceptions to jurisdiction exist.

15.     This Court has personal jurisdiction over Durning because he is a resident of California. Cal. Civ. Proc. § 410.10.

16.     This Court has personal jurisdiction over Delta because Delta has substantial, continuous

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

and systematic contacts with California. Cal. Civ. Proc. § 410.10.

17.     Venue is proper in this Court because Defendants reside and/or do business in Los Angeles County and some or all of the violations of law alleged herein occurred in the County of Los Angeles. Cal. Civ. Proc. § 395.

**FACTUAL ALLEGATIONS**

18.     The Plaintiffs reside together in Los Angeles County, California. Plaintiffs' extended family, including elderly aunts, uncles, and grandparents, live on the East Coast of the United States. Until the Covid-19 global pandemic, Plaintiffs traveled annually to visit their extended family on the East Coast, primarily in the Orlando, Florida area. Plaintiffs were looking forward to resuming this annual tradition in 2022 and arranged to fly to Orlando, Florida on June 23, 2022. As part of this trip, Plaintiffs paid money to Delta for the purchase of three airline tickets on the Flight which was scheduled to leave LAX on June 23 in the late evening and arrive the next day, June 24, at MCO.

19.     Plaintiff S.S. was given three seat assignments on the Flight for herself and her two children: two seats in row 10 and one in row 12. All of the seats were in the "Comfort Plus" section of the airplane. The "Comfort Plus" section on Delta-operated flights refers to an area of the plane in between First Class and the main cabin, with unlimited free snack and beverage service and more legroom than in the main cabin. Specifically, Plaintiffs received seats 10A and 10B, which were the window and middle seats to the left of the aisle, and seat 12E which was a middle seat two rows behind 10A and 10B, and on the right side of the aisle.

20.     Despite her efforts to sit together with her children, Plaintiff S.S. ended up sitting with her son, J.B., in row 10 and Plaintiff Z.B. sat in row 12 in between two strangers – Durning on one side and the Female Passenger on the other.

21.     Durning reeked of alcohol and was visibly intoxicated as he boarded the flight. Once he was on the Flight, other passengers could smell the alcohol on Durning, and he visually appeared to be intoxicated. Durning has admitted that he was intoxicated prior to boarding the Flight.

22.     Delta repeatedly served alcohol to Durning during the initial hours of the flight. After the food and beverage service was completed, the lights were dimmed throughout the airplane.

23.     Durning harassed, threatened and repeatedly sexually assaulted Plaintiff Z.B. in the dark

cabin while passengers around them slept. Specifically:

    a.   Durning moved his right leg to touch Plaintiff Z.B.'s left leg;

    b.   Durning rubbed Plaintiff Z.B.'s hair and neck with his hand;

    c.   Durning touched Plaintiff Z.B.'s breasts with his hands;

    d.   Durning told Plaintiff Z.B. that he was going to take her to Texas and that she would never see her family again;

    e.   Durning called Plaintiff Z.B. "honey boo";

    f.   Durning pried open Plaintiff Z.B.'s legs and pushed his finger into her vagina over her clothes; and

    g.   Durning rubbed his genitals with his hand over his trousers, with his zipper open.

24.    Plaintiff Z.B., due to her selective mutism, was unable to cry out for help. Plaintiff Z.B. sat in her seat, terrified and crying, and tried to physically move away from Durning. When the Female Passenger woke up, she saw Durning quickly remove his hand from Plaintiff Z.B.'s upper thigh area.

25.    The Female Passenger asked Plaintiff Z.B. if "he touched you."  Plaintiff Z.B. began crying and shaking in response. The Female Passenger immediately switched seats with Plaintiff Z.B. and sought the attention of Delta flight attendants.

26.    A Delta flight attendant and in-flight leader (referred to herein as the "In-Flight Leader") came to speak with the Female Passenger. The In-Flight Leader was in charge of the onboard operations of the crew, served as the liaison between the pilot and the rest of the crew, and was responsible for initiating responses to physical emergencies in the aircraft or any other incident requiring major attention. The In-Flight Leader was an employee of Delta and acting in his official capacity during the Flight. The Female Passenger informed the In-Flight Leader that Durning had inappropriately touched Plaintiff Z.B., who was a minor. The In-Flight Leader then went to get Plaintiff S.S.

27.    When the In-Flight Leader walked two rows away to alert Plaintiff S.S., Durning stretched across the Female Passenger in the direction of Plaintiff Z.B. When the Female Passenger attempted to push Durning away, he grabbed the Female Passenger's breasts. The Female Passenger pushed Durning away and warned him to stop. Despite the Female Passenger's warnings, and even after the In-Flight Leader returned with Plaintiff S.S., Durning continued to repeatedly attempt to touch the Female

Passenger's breasts. The Female Passenger also told the In-Flight Leader that Durning touched her breasts. Plaintiff Z.B., terrified, watched Durning sexually harass the Female Passenger repeatedly.

28.     Delta's response to learning of Durning's sexual assault on Z.B. and the Female Passenger was to keep Plaintiff Z.B. seated in row 12, where the sexual assault happened, move her mother and brother to that row to sit next to her, and move Durning to row 10 which was diagonally across from and a mere few feet away from where Plaintiffs were now sitting.  When Durning stood up to move seats his pants zipper was pulled all the way down. Plaintiff S.S. asked that Durning to be moved to a different seat where she and her children would not be able to see him, but Delta refused that request.

29.     Delta's inadequate response emboldened Durning and allowed him to continue harassing Plaintiffs for the duration of the flight. Durning repeatedly turned back to leer at the Plaintiffs, especially at Plaintiff Z.B. In addition, Delta allowed Durning to move freely about the cabin, allowing him to approach Plaintiffs and grab his genitals over his clothes and shake them at the Plaintiffs while taunting them. Delta's refusal to control or restrain Durning even extended to allowing him to roam freely in the Comfort Plus and First-Class sections of the plane.

30.     Delta's measures were also insufficient to deter or prevent Durning from harassing the passengers around him. Durning repeatedly harassed and inappropriately touched another passenger who was seated next to him. Delta flight attendants were alerted to the issue and did nothing even though Tuff Cuff restraints (stainless steel handcuffs) were readily available for use on the flight.

31.     After being made aware of the sexual assault, Delta chose not to divert the flight and remove Durning from the plane even though Durning continued his disrupting and harassing conduct. Delta further chose not to restrain Durning or move him to a seat far from Plaintiffs, even though Durning continued his disrupting and harassing conduct.

32.     Upon landing in Orlando, Florida, Delta employees did not restrain Durning or arrange for law enforcement to escort Durning off the aircraft before allowing passengers to deplane. Instead, they allowed Durning to walk freely to row 12, where the Plaintiffs were sitting, where he continued to harass them by leaning his body over them repeatedly in the direction of Plaintiff Z.B.

33.     After Durning exited the aircraft, unaccompanied by any Delta personnel, he stopped and stood facing the gate to wait for Plaintiff Z.B. so that he could harass her once more. When he saw Plaintiff

Z.B. walking down the jet bridge, Durning grabbed his groin while looking directly at her. He also threw his phone to the ground and shouted as the Plaintiffs exited the jet bridge.

34.     Eventually, Durning was arrested at MCO for his actions. On June 22, 2023, Durning was convicted of a felony for his actions on the flight towards Z.B by a jury in federal court in the United States District Court for the Middle District of Florida.

35.     In the months since the harrowing ordeal, Plaintiff Z.B. has become withdrawn and her anxiety disorder has been severely exacerbated. She experiences frequent nightmares about the incident and does not want to sleep alone. Plaintiff Z.B. suffers from Post-Traumatic Stress Disorder and Depression, frequent panic attacks and bouts of nausea since the incident, and fears that a man will do something to her whenever she is out in public. She has developed a fear of flying, refuses to wear a bathing suit or shorts since the incident, and no longer hugs family members. She has become combative with her parents and has reacted negatively to her father touching her on the shoulder. She believes that she sees Durning when out in public, or on the television. She has developed tics including blinking excessively, clearing her throat repeatedly, and tensing her neck.

36.     Plaintiff Z.B. missed more than 40 days of school in the fall semester following the incident, needing private tutoring to catch up on the classes she missed. A formerly stellar student, Plaintiff Z.B. lost motivation and interest in school. She has been regularly seeing a school counselor and a professional therapist since the incident. Plaintiff Z.B. has also engaged in the self-destructive behavior of "cutting," including using scissors to cut her thigh, which is one of the places Durning put his hands during the assault.

37.     Plaintiff J.B. suffers from nightmares about the incident. Since the incident, he has become afraid of male strangers and his friends' fathers, crowds, and flights. He has become afraid of dark public spaces such as movie theaters and refuses to go to places outside of school or home without his mother. Plaintiff J.B. suffers from anxiety regarding his sister Plaintiff Z.B.'s safety, school, and changes to his routine, and refuses to change his clothes for physical education classes. He has required the support of a one-on-one aide at school since the incident.

38.     Plaintiff S.S. suffers from nightmares about the incident and suffers from anxiety regarding her children's safety and health, panic attacks, depression, and insomnia. Plaintiff S.S. struggles with

everyday tasks including going to work, and her marriage has suffered as a result of the emotional and mental impact of the incident and its aftermath.

## FIRST CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)

39.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

40.     Delta solicits and operates a transportation service. Transportation is not incidental to Delta's business but, rather, is Delta's primary means of making money. As such, Delta is a common carrier under Civil Code § 2168 and Public Utilities Code § 211.

41.     A common carrier has a duty to use the utmost care and diligence for passengers' safety, must provide everything necessary for that purpose, and must exercise a reasonable degree of skill. Civil Code § 2100. At all material times, Delta owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual, and mental abuse posed by other passengers.

42.     At all relevant times, Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or was acting in the course and scope of such agency, partnership, joint venture, association and/or employment.

43.     The outrageous acts and/or omissions by Delta and Does 1 through 5 intentionally or recklessly caused severe emotional distress to Plaintiffs including, but not limited to, the following:

   a.   when they allowed Durning to board the Flight in a visibly intoxicated state;

   b.   when they allowed Durning to take his seat in a visibly intoxicated state;

   c.   when they served Durning multiple drinks while Durning was in a visibly intoxicated state;

   d.   when they failed to restrain Durning and allowed him to roam free in the cabin when directly warned by the Female Passenger of Durning's assault of Plaintiff Z.B. and herself;

   e.   when they failed to restrain Durning and allowed him to roam free in the cabin when

directly warned by another passenger of Durning's continuing harassment of other passengers;

f.  when they failed to restrain Durning and allowed him to roam free in the cabin after having actual knowledge of Durning's continuing harassment of Plaintiffs Z.B., J.B., and S.S; and

g.  when they failed to escort or allow law enforcement to escort Durning off the aircraft and keep him away from Plaintiffs after having actual knowledge of Durning's assault on Plaintiff Z.B. and continuing harassment of Plaintiffs.

44.     Delta and Does 1 through 5 acted with intent or recklessness, knowing that Plaintiffs would likely endure severe emotional distress from an intoxicated passenger's outrageous conduct, especially given Plaintiffs' relative lack of power or control over their situation or ability to report a crime while passengers on the Flight.

45.     Delta and Does 1 through 5 acted with intent or recklessness, by failing to take adequate safety measures to protect Plaintiffs after receiving actual notice that Durning had sexually assaulted Plaintiff Z.B. and another passenger, knowing that Plaintiffs would likely continuously endure severe emotional distress from Durning's outrageous conduct, who was intoxicated, seated only two rows away from Plaintiffs, and unrestrained throughout the flight and when exiting the aircraft.

46.     As a direct and proximate result of the above acts and/or omissions by Delta and Does 1 through 5, Plaintiffs have suffered and continue to suffer substantial and permanent injuries, in an amount to be determined according to proof, including but not limited to: severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

47.     In subjecting Plaintiffs to the wrongful acts herein described Delta and Does 1 through 5 acted intentionally or recklessly with a willful and conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiffs are therefore entitled to the recovery

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

of punitive damages against Delta and Does 1 through 5, in an amount to be determined according to proof.

## SECOND CAUSE OF ACTION

## GROSS NEGLIGENCE

## (ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)

48.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 47 above as though fully set forth and brought in this cause of action.

49.     Delta is a common carrier under Civil Code § 2168 and Public Utilities Code § 211, and as such owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual and mental abuse posed by other passengers. The risk of in-flight sexual abuse, assault or harassment by passengers, including intoxicated passengers, was a foreseeable risk in light of the prevalence of such instances. The Plaintiffs were paying customers on the Flight and Delta owed them the highest degree of care in providing for their safety.

50.     At all relevant times, Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or was acting in the course and scope of such agency, partnership, joint venture, association and/or employment.

51.     It has been public knowledge for several years that in-flight sexual assault is a pervasive issue, and that such assaults are more likely to occur on red-eye flights. In June 2018, the FBI published an article commenting on the increase in reported cases of in-flight sexual assault.[1]  The FBI noted that there was a 66% increase in the number of such cases reported to the FBI from fiscal year 2014 to fiscal year 2017, and also that the "attacks generally occur on long-haul flights when the cabin is dark."[2]  The number of in-flight sexual assault investigations opened by the FBI increased again from 63 to 119 in the year 2019, showing a 89% increase from the year 2018.[3]

---

[1]   *Sexual Assault Aboard Aircraft: Raising Awareness About a Serious Federal Crime*, FBI News (Apr. 26, 2018), https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618.

[2]   *Id.*

[3]   Justin Gray, *Sexual Assaults on Airplanes on the Rise, FBI Warns*, WSB-TV (Feb. 3, 2020, 12:09 PM), https://www.wsbtv.com/news/2-investigates/sexual-assaults-airplane-rise-fbi-warns/HZRVB762XVGONC53ZFNSUCJXQA/.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

52.     A report published by the International Air Transport Association reported 812 incidents of physical aggression, obscene or lewd physical contact, or conduct causing damage to aircraft fixtures or equipment during the year 2018.[4]

53.     News media have reported on multiple cases of passenger-on-passenger in-flight sexual assault for years,[5] including in particular cases of in-flight sexual assaults of children traveling unaccompanied by an adult or seated separately from their guardian.[6]

54.     In particular, Delta knew numerous in-flight sexual assaults that occurred on flights that it operated, including, but not limited to, the following instances. In 2016, an intoxicated man performed a sex act on himself and sexually assaulted a woman sitting next to him on a flight operated by ExpressJet, which is operated by Delta.[7]   In 2017, a man sexually assaulted a female passenger on a Delta flight from Charlottesville, Virginia to Atlanta, Georgia.[8]   In 2018, a 23-year-old woman was sexually assaulted by

---

[4]   Int'l Air Transp. Ass'n, *Safety Report 2018* at 111-12 (Apr. 2019), https://www.iata.org/contentassets/4d18cb077c5e419b8a888d387a50c638/iata-safety-report-2018.pdf.

[5]   *See, e.g.*, Julia Marnin, *Sleeping woman wakes up twice to passenger groping her on red-eye flight to NJ, feds say*, Miami Herald (Sept. 4, 2023, 2:53 PM), https://www.miamiherald.com/news/nation-world/national/article278951299.html; *Delta passenger sues airline, claims crew didn't detain passenger who sexually assaulted her on flight*, Fox News (Sept. 28, 2018, 10:12 AM), https://www.foxnews.com/travel/delta-passenger-sues-airline-claims-crew-didnt-detain-passenger-who-sexually-assaulted-her-on-flight; Allison Dvaladze, *Airline industry treats sexual assaults in the skies like an inconvenience, not a crime*, USA Today (Apr. 1, 2019, 6:00 AM), https://www.usatoday.com/story/opinion/voices/2019/04/01/sexual-assault-airlineflight-elaine-chaotrump-boeing-column/3312204002/; Christopher Mele, *Sexual Assault on Flights: Experts Recommend Ways to Stay Safe and Combat It*, N.Y. Times (Mar. 23, 2019), https://www.nytimes.com/2019/03/23/travel/airline-flights-sexual-assault.html; David Oliver, *Passenger indicted for alleged mid-flight sexual assault of 19-year-old woman*, USA Today (May 21, 2019, 3:50 PM), https://www.usatoday.com/story/travel/flights/2019/05/21/united-airlines-passengerallegessexual-assault/3751023002/.

[6]   Robert Arnold, *Houston area teen reports being molested on flight to California*, Click2Houston (June 6, 2023, 9:53 AM), https://www.click2houston.com/news/investigates/2023/06/06/houston-area-teen-reports-being-molested-on-flight-to-california/; Amy Clancy, *Seattle teen: United Airlines 'negligent' for in-flight sexual assault*, Kiro7 (May 21, 2019, 11:35 PM), https://www.kiro7.com/news/local/tonight-at-5-30-seattle-teen-united-airlines-negligent-for-in-flight-sexual-assault/950947481/; Michael Miller, *'This was 30 minutes of hell for this lady': Unaccompanied minor groped on flight*, The Washington Post (June 20, 2016, 6:33 AM), https://www.washingtonpost.com/news/morning-mix/wp/2016/06/20/this-was-30-minutes-of-hell-for-this-young-lady-unaccompanied-minor-groped-on-flight/.

[7]   Oralandar Brand-Williams, *Woman sues Delta Airlines over sex assault on flight*, The Detroit News (June 13, 2017, 3:28 PM), https://www.detroitnews.com/story/news/local/wayne-county/2017/06/13/passenger-sues-delta-airlines-sex-assault/102813688/.

[8]   Raisa Habersham, *FBI: Man threw pretzel bag, groped woman on Delta flight to Atlanta*, The Atlanta Journal-Constitution (Mar. 14, 2018), https://www.ajc.com/news/crime-law/fbi-man-threw-pretzel-bag-groped-woman-delta-flight-atlanta/s6Ock8D4UFUtD4JVf5xgqM/.

an intoxicated male passenger on a Delta flight from Chicago, Illinois to Los Angeles, California.[9]  In 2019, a woman was sexually assaulted on a Delta flight from Atlanta, Georgia to Germany by a neighboring passenger while she was sleeping.[10]  In 2021, a man sexually assaulted a 19-year-old woman sitting next to him on a Delta flight from the Netherlands to Detroit, Michigan, while she was sleeping and the cabin lights were dimmed.[11]

55.     As an air carrier, Delta and Does 1 through 5 violated laws, regulations, and policies by including, but not limited to, the following:

    a.  allowing Durning to board the Flight in a visibly intoxicated state;

    b.  allowing Durning to take his seat in a visibly intoxicated state; and

    c.  serving Durning multiple drinks while Durning was in a visibly intoxicated state.

56.     Delta and Does 1 through 5 breached their duties as a common carrier and violated that heightened degree of care owed to Plaintiffs by including, but not limited to, the following:

    a.  failing to have or enforce adequate policies and procedures to prevent and properly respond to in-flight sexual assaults;

    b.  allowing Durning to board the Flight in a visibly intoxicated state;

    c.  allowing Durning to take his seat in a visibly intoxicated state;

    d.  serving Durning multiple drinks while Durning was in a visibly intoxicated state;

    e.  failing to act adequately when directly warned by the Female Passenger of Durning's assault of Plaintiff Z.B. and herself;

    f.  failing to act adequately when directly warned by another passenger of Durning's continuing harassment of other passengers; and

---

[9]  Ewan Palmer, *Delta Passenger Says She Was Sexually Assaulted on Flight and Given $200 Coupon to Make Up For It,* Newsweek (July 24, 2018, 11:15 AM), https://www.newsweek.com/delta-passenger-says-she-was-sexually-assaulted-flight-and-given-200-coupon-1039773.

[10]  Nikki McGee, *Murfreesboro couple sues Delta Airlines after alleged in-flight sexual assault,* WKRN.com (Apr. 29, 2021, 10:31 PM), https://www.wkrn.com/news/local-news/murfreesboro-couple-sues-delta-airlines-after-alleged-in-flight-sexual-assault/.

[11]  Derick Hutchinson, *Man who sexually assaulted woman in middle seat of Delta flight to Detroit claims he was asleep, feds say,* Click On Detroit (Apr. 20, 2022, 8:00 AM), https://www.clickondetroit.com/news/local/2022/04/20/man-who-sexually-assaulted-woman-in-middle-seat-of-delta-flight-to-detroit-claims-he-was-asleep-feds-say/.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

g.   failing to act adequately after having actual knowledge of Durning's continuing harassment of Plaintiffs Z.B., J.B., and S.S.

57.     The above-mentioned actions and/or omissions by Delta and Does 1 through 5, when viewed objectively, involved an extreme degree of risk and constituted an extreme departure from the ordinary standard of conduct, considering the probability and magnitude of the potential harm to others.

58.     Delta and Does 1 through 5 had actual, subjective awareness of this risk, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs. The gross negligence of Delta and Does 1 through 5, especially by ignoring its own policies and credible reports that Durning had sexually assaulted passengers including a minor child, and by failing to take meaningful steps to protect Plaintiffs, was a proximate cause of the assaults and harassment that Plaintiffs suffered and of the damages and injuries alleged herein.

59.     The above acts and/or omissions by Delta and Does 1 through 5 were a proximate cause of the physical damage, severe emotional distress, and physical manifestations of severe emotional distress that Plaintiffs Z.B., J.B. and S.S. have suffered and continue to suffer in an amount to be determined according to proof.

60.     Plaintiffs J.B. and S.S., the brother and mother of Plaintiff Z.B., were in the same airplane cabin as Plaintiff Z.B., seated next to Plaintiff Z.B., or walking next to Plaintiff Z.B. during the injuries that Plaintiff Z.B. suffered. Plaintiffs J.B. and S.S. were aware that Delta's grossly negligent and careless injury-producing conduct was causing injury to Plaintiff Z.B. because they were alerted to Durning's conduct by the Female Passenger, and because they witnessed Durning's subsequent conduct after he was moved to row 10.

61.     As a direct and proximate result of witnessing the injury to Plaintiff Z.B. caused by the grossly negligent and careless conduct of Delta and Does 1 through 5, and because they also received and observed taunts and sexual gestures when they were sitting next to Plaintiff Z.B., Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

62.     As a result of this gross negligence, Plaintiffs are entitled to and seek exemplary damages in an amount to be determined according to proof.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

63.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 62 above as though fully set forth and brought in this cause of action.

64.     As a common carrier, Delta owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual and mental abuse posed by other passengers.

65.     The above-mentioned acts and/or omissions by Delta and Does 1 through 5 constituted a breach of that duty.

66.     As a direct, legal, and proximate result of the acts and/or omissions by Delta and Does 1 through 5, Plaintiffs Z.B., J.B. and S.S. suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

67.     Plaintiffs J.B. and S.S., the brother and mother of Plaintiff Z.B., were in the same airplane cabin as Plaintiff Z.B., seated next to Plaintiff Z.B., or walking next to Plaintiff Z.B. during the injuries that Plaintiff Z.B. suffered. Plaintiffs J.B. and S.S. were aware that Delta's negligent injury-producing conduct was causing injury to Plaintiff Z.B. because they were alerted of Durning's conduct by the Female Passenger, or because they witnessed Durning's subsequent conduct after he was moved to row 10.

68.     As a direct, legal, and proximate result of witnessing the injury to Plaintiff Z.B. caused by the negligent conduct of Delta and Does 1 through 5, Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

///

///

16

**FOURTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

69.　Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 68 above as though fully set forth and brought in this cause of action.

70.　Delta and Does 1 through 5 owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual, and mental abuse posed by other passengers.

71.　While on board the Flight, the Plaintiffs had limited mobility, were unable to escape from Durning, or report a crime to the authorities on their own.

72.　Delta and Does 1 through 5 knew or should have known that Plaintiffs who experienced and witnessed in-flight sexual assault and were treated poorly or inadequately in the aftermath would experience severe emotional distress.

73.　Delta and Does 1 through 5 could reasonably foresee that their actions and/or omissions would cause severe emotional distress to Plaintiffs.

　　　　a.　Delta and Does 1 through 5 could reasonably foresee that allowing Durning, a visibly intoxicated passenger, to board the aircraft and then providing Durning with more alcoholic beverages while seated next to an unaccompanied child created a heightened risk of sexual assault which Delta and Does 1 through 5 failed to mitigate or address.

　　　　b.　After being notified of the assault of Plaintiff Z.B., Delta and Does 1 through 5 failed to take adequate measures that would prevent Durning from continuing to harass Plaintiff Z.B, Plaintiff J.B., and Plaintiff S.S.

　　　　c.　Delta and Does 1 through 5 could reasonably foresee that after Plaintiff Z.B. was sexually assaulted on the Flight, seating Durning only a few feet away from Plaintiffs would further cause Plaintiffs severe emotional distress.

　　　　d.　Delta and Does 1 through 5 could reasonably foresee that Durning, who remained intoxicated and unrestrained for the rest of the Flight, would likely cause harm to Plaintiffs and other passengers.

17

74.    Through the above-described actions and/or omissions, Delta and Does 1 through 5 failed to exercise utmost care and negligently caused severe emotional distress to Plaintiffs.

75.    As a direct, legal, and proximate result of the acts and/or omissions by Delta and Does 1 through 5, Plaintiffs Z.B., J.B. and S.S. suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

76.    Plaintiffs J.B. and S.S are immediate family members of Plaintiff Z.B. They were also passengers on the Flight located just a few feet away from Plaintiff Z.B. during the assault of Plaintiff Z.B. As a direct and proximate result of witnessing the injury to Plaintiff Z.B. caused by the negligent conduct of Delta and Does 1 through 5, Plaintiffs J.B. and S.S. suffered and continue to suffer substantial and permanent injuries, including severe emotional distress and physical manifestations of severe emotional distress, including anxiety, humiliation, loss of enjoyment of life, fear of flying, inability to perform daily activities, and other physical and emotional injuries in an amount to be determined according to proof.

77.    As a direct, legal, and proximate result of the negligent conduct by Delta and Does 1 through 5 that allowed Durning to continue to harass Plaintiffs J.B. and S.S., Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

## FIFTH CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

### (ALL PLAINTIFFS AGAINST DELTA)

78.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 77 above as though fully set forth and brought in this cause of action.

79.    Delta's conduct as described herein constitutes a "business practice" under the Business & Professions Code, Section 17200, et seq. ("Section 17200").

80.     Under California law, Section 17200 "borrows" violations of other laws, including common law, and treats them as unlawful practices independently actionable under Section 17200.

81.     Delta has engaged in unlawful conduct within the meaning of Section 17200 by virtue of Delta's acts and omissions which violate common law and constitute negligence, gross negligence, negligent infliction of emotional distress and/or intentional infliction of emotional distress. As described herein, those acts and omissions include but are not limited to, allowing a visibly intoxicated person to board the plane, allowing a visibly intoxicated person to take his seat on the plane, continuing to serve a visibly intoxicated person alcohol during the flight, forcing Plaintiff Z.B., a minor, to stay in the seat where the assault took place after they had knowledge of the assault, sitting Durning near Plaintiff Z.B., his victim, and her family and not moving him to the back of the plane, refusing to control or restrain Durning and allowing him to roam free in the cabin after being told of his sexual assault of a minor, refusing to control or restrain Durning and allowing him to roam free in the cabin after learning of Durning's continuing harassment of Plaintiffs and other passengers, allowing Durning to retrieve his luggage from the compartment directly above Plaintiffs while they were forced to stay in their seats and endure Durning's further harassment of them, and failing and/or refusing to escort or allow law enforcement to escort Durning off the aircraft and keep him away from Plaintiffs thereby providing another opportunity for Durning to wait for his victim and harass her and Plaintiff J.B. and Plaintiff S.S. once more.

82.     As a direct and foreseeable result of Delta's violation of Section 17200, Plaintiffs have suffered and continue to suffer economic harm and substantial irreparable harm as described herein. Plaintiffs are therefore entitled to relief.

## **SIXTH CAUSE OF ACTION**

### **ASSAULT**

### **(PLAINTIFF Z.B. AGAINST DURNING)**

83.     Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

84.     Durning, with intent to cause harmful or offensive contact, touched Plaintiff Z.B. in the lower leg, upper thigh, vaginal area, and breasts.

85. Plaintiff Z.B. reasonably believed that she was about to be touched in a harmful offensive manner, in light of Durning calling her "honey boo," and telling her that he would take her to Texas and that she would never see her family again, and in light of each prior instance of harmful or offensive contact by Durning.

86. Plaintiff Z.B. did not consent to Durning's conduct.

87. As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior. In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

## SEVENTH CAUSE OF ACTION

## SEXUAL BATTERY (CIVIL CODE § 1708.5)

## (PLAINTIFF Z.B. AGAINST DURNING)

88. Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

89. Durning touched Plaintiff Z.B. in the groin, vaginal area, and breasts.

90. Durning committed the acts set forth herein with the intent to cause harmful or offensive contact with an intimate part or parts of Plaintiff Z.B.'s person and that would offend a reasonable sense of personal dignity. The acts by Durning did in fact cause a harmful or offensive contact with Plaintiff Z.B.'s person that would offend a reasonable person in Plaintiff Z.B.'s situation.

91. Plaintiff Z.B. did not give consent to Durning's conduct.

92. As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to

proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

93.    In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

### EIGHTH CAUSE OF ACTION

### BATTERY

### (PLAINTIFF Z.B. AGAINST DURNING)

94.    Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

95.    Durning touched Plaintiff Z.B. in the leg, groin, vaginal area, and breasts.

96.    Durning committed the acts set forth herein with the intent to cause a harmful or offensive contact with Plaintiff Z.B.'s person and that would offend a reasonable sense of personal dignity. Further, said acts by Durning did cause a harmful or offensive contact with Plaintiff Z.B.'s person that would offend a reasonable person in Plaintiff Z.B.'s situation.

97.    Plaintiff Z.B. did not consent to the touching.

98.    Plaintiff Z.B. was harmed by Durning's inappropriate and wrongful conduct.

99.    As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

100.    In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully

and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

**NINTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS AGAINST DURNING)**

101.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

102.    Durning intentionally touched Plaintiff Z.B. on her lower legs, thigh, groin, vaginal area, and breasts. Durning pleasured himself over his clothing both while forcibly touching Plaintiff Z.B. on the Flight and while looking at Plaintiff Z.B. as she and the other Plaintiffs were disembarking from the aircraft at MCO.

103.    Durning pleasured himself over his clothing while leering at Plaintiffs while on the Flight. Durning intentionally verbally harassed Plaintiffs on multiple occasions during the Flight and after it landed. Durning grabbed his genitals and shook them at Plaintiffs and taunted them while on the Flight.

104.    Durning's conduct was extreme, outrageous, and had a severe and traumatic effect upon the mental and emotional tranquility of Plaintiffs.

105.    As an actual and proximate result of the intentional and malicious acts of Durning, Plaintiffs suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

106.    In subjecting Plaintiffs to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiffs and with a willful and conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiffs are therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray:

1.      For past, present, and future non-economic damages, in an amount to be determined at trial;

2.      For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages and others, in an amount to be determined at trial;

3.      For exemplary and punitive damages in an amount deemed sufficient by the trier of fact to punish, deter, and make an example of Defendants and to be determined at the time of trial;

4.      For costs and expenses of suit, including expert witness fees;

5.      For reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and/or any other applicable provision providing for attorneys' fees;

6.      For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law; and

7.      For any other equitable and further relief as the Court may deem proper.

**REQUEST FOR JURY TRIAL**

Plaintiffs Z.B., J.B., and S.S. hereby demand a trial by jury on all issues.

Dated: January 30, 2024

Respectfully submitted,
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

By:  /s/ Jessica R. Lobis Buckwalter
Jessica R. Lobis Buckwalter (SBN 199200)
Adam Kaufmann (*pro hac vice* admission pending)
Li Jiang (SBN 292940)

**AGNIFILO LAW GROUP, APC**

By:  /s/ Karen Agnifilo
Karen Agnifilo (*pro hac vice* admission pending)

**DE CASTRO LAW GROUP, P.C.**

By:  /s/ José-Manuel A. de Castro
José-Manuel A. de Castro (SBN 213769)

*Attorneys for Plaintiffs*