**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)
   *Jessica.Buckwalter@lbkmlaw.com*
1050 K St., NW, Ste 400 Washington, DC 20001
Telephone: (202) 833-8900; Facsimile: (202) 466-5738

Adam Kaufmann (*pro hac vice* admission pending)
   *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)
   *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Fl.
New York NY 10017
Telephone: (212) 826-7001; Facsimile: (202) 826-7146

**AGNIFILO LAW GROUP, APC**
Karen Agnifilo (*pro hac vice* admission pending)
   *karen@agnifilolaw.com*
256 5th Avenue, New York, NY 10001
Telephone: (646) 596-2919

**DE CASTRO LAW GROUP, P.C.**
José-Manuel A. de Castro (SBN 213769)
   *jmdecastro@decastrolawgroup.com*
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504
Telephone: (310) 270-9877; Facsimile: (310) 341-2330

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z.B., a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>DELTA AIR LINES, INC.; BRIAN PATRICK DURNING; and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. 2:24-cv-02178-FLA-DFM<br><br>**PLAINTIFFS' NOTICE OF FILING ADDITIONAL STATE COURT DOCUMENTS NOT INCLUDED IN DEFENDANT DELTA AIR LINES, INC.'S NOTICE OF REMOVAL** |

1
2
3
4
5
6

In accordance with this Court's Initial Standing Order dated March 22, 2024, Defendant Delta Air Lines, Inc ("Delta") was ordered to include as a supplement to its notice of removal all documents filed in state court.  Delta's supplement to its notice of removal did not include all state court filed documents. Plaintiffs attach as **Exhibit A**, hereto the filed state court documents that are missing from Delta's supplement to its notice of removal**.**

7

8
9
10

Dated: March 25, 2024

Respectfully submitted,
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

11
12
13

By:  /s/ Jessica Buckwalter
Jessica R. Lobis Buckwalter (SBN 199200)
Adam Kaufmann (*pro hac vice* pending)
Li Jiang (SBN 292940)

14

**AGNIFILO LAW GROUP, APC**

15
16

By:  /s/ Karen Agnifilo
Karen Agnifilo (*pro hac vice* pending)

17

**DE CASTRO LAW GROUP, P.C.**

18
19
20
21

By:  /s/ José-Manuel A. de Castro
José-Manuel A. de Castro (SBN 213769)
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, California 91504
Telephone: (310) 270-9877;
jmdecastro@decastrolawgroup.com

22

*Attorneys for Plaintiffs*

23
24
25
26
27
28

# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Southwest District, Torrance Courthouse, Department P

**24TRCV00333**                                            February 14, 2024
**Z. B., et al. vs DELTA AIR LINES, INC., et al.**                    9:30 AM

Judge: Honorable David K. Reinert          CSR: None
Judicial Assistant: M. Golleher            ERM: None
Courtroom Assistant: J. Williams           Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): David Larmore for Jose-Manuel de Castro Via-LACourtConnect

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application FOR AN ORDER
ALLOWING PLAINTIFFS' GUARDIAN AD LITEM TO PROCEED UNDER A
PSEUDONYM PURSUANT TO CODE OF CIVIL PROCEDURE § 372.5; AND
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

The matter is transferred from Department B for this hearing only.

The Court rules from chambers.

The EX PARTE APPLICATION FOR AN ORDER ALLOWING PLAINTIFFS' GUARDIAN
AD LITEM TO PROCEED UNDER A PSEUDONYM PURSUANT TO CODE OF CIVIL
PROCEDURE § 372.5; AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT
THEREOF filed by S. S., S. S., Z. B., J. B. on 02/09/2024 is Granted.

The Appointing Guardian Ad Litem for Plaintiff Z.B. (minor) filed by Z. B., S. S., S. S. on
02/13/2024 is Granted.

The Ex Parte Application Appointing Guardian Ad Litem for Plaintiff J.B. (minor) filed by S. S.,
S. S., J. B. on 02/13/2024 is Granted.

Notice is not necessary.

CIV-011/FL-936

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| Jessica R. Lobis Buckwalter (SBN 199200); Lewis Baach Kaufmann Middlemiss PLLC; 1050 K Street, NW, Suite 400, Washington D.C. 20001; Email: jessica.buckwalter@lbkmlaw.com; Tel: (202) 833-8900; Fax: (202) 466-5738<br>José-Manuel A. de Castro (SBN 213769); De Castro Law Group, P.C.; 7590 N. Glenoaks Blvd., Suite 201, Los Angeles, CA 91504; Email: jmdescastrolawgroup.com; Tel: (310) 270-9877; Fax: (310) 341 2330 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**02/14/2024**<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ M. Golleher _____ Deputy |

ATTORNEY FOR (name): Z.B. and J.B., through their guardian, and S.S.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 825 Maple Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Torrance, 90503
BRANCH NAME: Torrance Courthouse

PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.
DEFENDANT/RESPONDENT: Delta Air Lines Inc., Brian Patrick Durning and DOES 1-5
OTHER PARENT/PARTY:

| ORDER APPOINTING GUARDIAN AD LITEM—CIVIL AND FAMILY LAW<br>[x] EX PARTE | CASE NUMBER:<br>24TRCV00333 |
|---|---|

1. Applicant (name): S.S.
   seeks appointment of a guardian ad litem of (name): J.B.

2. [x] The application came on regularly for a hearing as follows:
   a. Judicial officer (name):
   b. Hearing date:           Time:           [ ] Dept.:           [ ] Room:
   c. The following persons were present at the hearing:
      (1) [ ] Applicant (name):
      (2) [x] Attorney for applicant (name): S.S.
      (3) [ ] Guardian ad litem named in item 6.
      (4) [ ] Attorney for guardian ad litem (name):
      (5) [x] Plaintiff/Petitioner (name): Z.B. and J.B., through their guardian, and S.S.
      (6) [ ] Attorney for Plaintiff/Petitioner (name):
      (7) [ ] Defendant/Respondent (name): Delta Air Lines Inc., Brian Patrick Durning and DOES 1-5
      (8) [ ] Attorney for Defendant/Respondent (name):
      (9) [ ] Other (names):

**THE COURT FINDS**

3. [x] All notices required by law have been given.

4. The person for whom a guardian ad litem is to be appointed is a party who is
   a. [x] a minor (date of birth): 12/29/2006
   b. [ ] a person who lacks legal capacity to make decisions.
   c. [ ] a person for whom a conservator has been appointed.

5. [x] The person for whom a guardian ad litem is to be appointed
   a. [ ] is a minor who is a party to an action under the Uniform Parentage Act. (Family Code, §§ 7600–7730.)
   b. [ ] is a minor who is requesting or opposing a request for an injunction or restraining order described in Code of Civil Procedure sections 372(b) and 374(a).
   c. [x] does not have a guardian or conservator of the estate.
   d. [ ] has a guardian or conservator of the estate, but the guardian or conservator is inadequate to represent the person's interest and appointment of a guardian ad litem is expedient.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-011/FL-936 [New January 1, 2024]

Page 1 of 2

**ORDER APPOINTING GUARDIAN AD LITEM—
CIVIL AND FAMILY LAW**

Code of Civil Procedure, § 372 et seq.;
Family Code, §§ 6229, 7635
www.courts.ca.gov

Electronically Received 02/13/2024 09:08 AM

CIV-011/FL-936

| PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Delta Air Lines Inc., Brian Patrick Durning and DOES 1-5 | 24TRCV00333 |
| OTHER PARENT/PARTY: | |

**THE COURT ORDERS**

6. *(Name):* S.S.
   is appointed guardian ad litem of *(name):* J.B.

7. The guardian ad litem ☒ is ☐ is *not* authorized to waive or disclaim any substantive rights of the represented party without further order of this court.

8. The guardian ad litem must promptly report to the court any potential conflict of interest with the represented person that becomes an actual conflict, as well as any new potential or actual conflict of interest that arises during the course of the representation.

9. ☒ Other *(specify):*
   The guardian ad litem is appointed under a pseudonym because there is an overriding interest in preserving anonymity.

☐ Continued on Attachment 9.

10. Number of pages attached: _____

Date: 02/14/2024

JUDICIAL OFFICER   David K. Reinert

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

**ORDER APPOINTING GUARDIAN AD LITEM—
CIVIL AND FAMILY LAW**

CIV-011/FL-936

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| Jessica R. Lobis Buckwalter (SBN 199200); Lewis Baach Kaufmann Middlemiss, PLLC; 1050 K Street, NW, Suite 400, Washington D.C. 20001; Email: jessica.buckwalter@lbkmlaw.com; Tel: (202) 833-8900; Fax: (202) 466 5738 José-Manuel A. de Castro (SBN 213769); De Castro Law Group, P.C.; 7509 N. Glenoaks Blvd., Suite 201, Los Angeles, CA 91504; Email: jmdecastro@decastrolawgroup.com; Tel: (310) 270-9877; Fax: (310) 341-2330 | |

ATTORNEY FOR *(name):* Z.B. and J.B., through their guardian, and S.S.

**FILED**
Superior Court of California
County of Los Angeles

**02/14/2024**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ J. Edwards _____ Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 825 Maple Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Torrance, 90503
BRANCH NAME: Torrance Courthouse

PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.
DEFENDANT/RESPONDENT: Delta Air Lines Inc., Brian Patrick Durning and DOES 1-5
OTHER PARENT/PARTY:

| ORDER APPOINTING GUARDIAN AD LITEM—CIVIL AND FAMILY LAW ☒ EX PARTE | CASE NUMBER: 24TRCV00333 |
|---|---|

Electronically Received 02/13/2024 09:08 AM

1. Applicant *(name):* S.S.
   seeks appointment of a guardian ad litem of *(name):* Z.B.

2. ☒ The application came on regularly for a hearing as follows:
   a. Judicial officer *(name):*
   b. Hearing date:               Time:          ☐ Dept.:          ☐ Room:
   c. The following persons were present at the hearing:
      (1) ☐ Applicant *(name):*
      (2) ☒ Attorney for applicant *(name):* S.S.
      (3) ☐ Guardian ad litem named in item 6.
      (4) ☐ Attorney for guardian ad litem *(name):*
      (5) ☒ Plaintiff/Petitioner *(name):* Z.B. and J.B., through their guardian, and S.S.
      (6) ☐ Attorney for Plaintiff/Petitioner *(name):*
      (7) ☐ Defendant/Respondent *(name):* Delta Air Lines Inc., Brian Patrick Durning and DOES 1-5
      (8) ☐ Attorney for Defendant/Respondent *(name):*
      (9) ☐ Other *(names):*

**THE COURT FINDS**

3. ☒ All notices required by law have been given.

4. The person for whom a guardian ad litem is to be appointed is a party who is
   a. ☒ a minor *(date of birth):* 06/17/2009
   b. ☐ a person who lacks legal capacity to make decisions.
   c. ☐ a person for whom a conservator has been appointed.

5. ☒ The person for whom a guardian ad litem is to be appointed
   a. ☐ is a minor who is a party to an action under the Uniform Parentage Act. (Family Code, §§ 7600–7730.)
   b. ☐ is a minor who is requesting or opposing a request for an injunction or restraining order described in Code of Civil Procedure sections 372(b) and 374(a).
   c. ☒ does not have a guardian or conservator of the estate.
   d. ☐ has a guardian or conservator of the estate, but the guardian or conservator is inadequate to represent the person's interest and appointment of a guardian ad litem is expedient.

Form Adopted for Mandatory Use
Judicial Council of California
CIV-011/FL-936 [New January 1, 2024]

**ORDER APPOINTING GUARDIAN AD LITEM—
CIVIL AND FAMILY LAW**

Page 1 of 2

Code of Civil Procedure, § 372 et seq.;
Family Code, §§ 6229, 7635
www.courts.ca.gov

CIV-011/FL-936

| PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.<br>DEFENDANT/RESPONDENT: Delta Air Lines Inc., Brian Patrick Durning and DOES 1-5<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>24TRCV00333 |
|---|---|

**THE COURT ORDERS**

6. *(Name):* S.S.
   is appointed guardian ad litem of *(name):* Z.B.

7. The guardian ad litem ☒ is ☐ is *not* authorized to waive or disclaim any substantive rights of the represented party without further order of this court.

8. The guardian ad litem must promptly report to the court any potential conflict of interest with the represented person that becomes an actual conflict, as well as any new potential or actual conflict of interest that arises during the course of the representation.

9. ☒ Other *(specify):*
   The guardian ad litem is appointed under a pseudonym because there is an overriding interest in preserving anonymity.

☐ Continued on Attachment 9.

10. Number of pages attached: _____

Date: 02/14/2024

_Qul K. Qul_

JUDICIAL OFFICER David K. Reinert
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

**ORDER APPOINTING GUARDIAN AD LITEM—
CIVIL AND FAMILY LAW**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/16/2024 11:44 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Horan, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DELTA AIR LINES INC., a corporation; BRIAN PATRICK DURNING, an individual; and DOES 1-50, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Z.B, a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

Torrance Courthouse, 825 Maple Ave, Torrance, CA 90503

| | |
|---|---|
| | **CASE NUMBER:**<br>*(Número del Caso):* |
| | **24TRCV00333** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jessica Lobis Buckwalter(199200) Lewis Baach Kaufmann Middlemiss,1050 K St. NW Suite 400,Washington DC 20001;(202)659-7971

DATE: 02/16/2024    David W. Slayton, Executive Officer/Clerk of Court    Clerk, by    M. Horan    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.  Brian Patrick Durning
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

    under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
           [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Electronically Received 02/09/2024 05:12 PM

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)
  *Jessica.Buckwalter@lbkmlaw.com*
1050 K Street, NW, Suite 400
Washington, DC 20001
Tel: (202) 833-8900; Fax: (202) 466-5738

Adam Kaufmann (*pro hac vice* admission pending)
  *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)
  *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Floor
New York NY 10017
Tel: (212) 826-7001; Fax: (202) 826-7146

**AGNIFILO LAW GROUP, APC**
Karen Agnifilo (*pro hac vice* admission pending)
  *karen@agnifilolaw.com*
256 5th Avenue, New York, NY 10001
Tel: (646) 596-2919

**DE CASTRO LAW GROUP, P.C.**
José-Manuel A. de Castro (SBN 213769)
  *jmdecastro@decastrolawgroup.com*
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504
Tel: (310) 270-9877; Fax: (310) 341-2330

Attorneys for Plaintiffs

**FILED**
Superior Court of California
County of Los Angeles

02/14/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ M. Golleher _____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – TORRANCE COURTHOUSE

| | |
|---|---|
| Z.B., a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DELTA AIR LINES, INC.; BRIAN PATRICK DURNING; and DOES 1 through 5, inclusive,<br><br>        Defendants. | CASE NO.: 24TRCV00333<br><br>~~[PROPOSED]~~ ORDER GRANTING *EX-PARTE* APPLICATION TO ALLOW PLAINTIFFS' GUARDIAN AD LITEM TO PROCEED UNDER A PSEUDONYM<br><br>*[Filed Concurrently with Ex-Parte Application; Memorandum of Points & Authorities; Declaration of Jessica R. Lobis Buckwalter; Application & Order For Appointment of Guardian Ad Litem]*<br><br>Date:  February 14, 2024<br>Time:  8:30 a.m.<br>Dept.:  B<br>Judge: Hon. Douglas W. Stern |

1

[PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION
FOR LEAVE TO PROCEED UNDER A PSEUDONYM  (CASE NO.: 24TRCV00333)

1

**[PROPOSED] ORDER**

2

    The COURT HEREBY FINDS, that there is GOOD CAUSE for S.S. to be appointed as

3

Z.B. and J.B.'s guardian ad litem under a fictitious designation pursuant to Section 372.5,

4

subdivisions (a) and (b) of the Code of Civil Procedure.

5

    The Court hereby grants Plaintiffs' *Ex Parte* Application For An Order Allowing

6

Plaintiffs' Guardian Ad Litem To Proceed Under A Pseudonym Pursuant to Code of Civil

7

Procedure Section 372.5.

8

9

**IT IS SO ORDERED.**

10

Dated: 02/14/2024

11

12

David K. Reinert

Honorable Douglas W. Stern

13

Judge of the Superior Court

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Jessica R. Lobis Buckwalter (199200), Lewis Baach Kaufmann Middlemiss, 1050 K. St., NW, Washington DC 20001<br><br>TELEPHONE NO.: (202) 833-8900   FAX NO. *(Optional):* (202) 466-5738<br>E-MAIL ADDRESS: jessica.buckwalter@lbkmlaw.com<br>ATTORNEY FOR *(Name):* Z.B. and J.B., through their guardian S.S., and S.S. | *FOR COURT USE ONLY* |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES<br>STREET ADDRESS: 825 Maple Ave.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Torrance, CA 90503<br>BRANCH NAME: Torrance Courthouse | **Electronically FILED by Superior Court of California, County of Los Angeles 1/30/2024 10:26 AM David W. Slayton, Executive Officer/Clerk of Court, By M. Horan, Deputy Clerk** |
| CASE NAME:<br>Z.B. et. al v. Delta Air Lines, Inc., et. al. | |

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [X] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **24TRCV00333** |
| | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[X] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* 9
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 30, 2024

Jessica R. Lobis Buckwalter
_____
(TYPE OR PRINT NAME)          ▶        _____
                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Z.B. et. al. v Delta Air Lines, Inc., et. al. | 24TRCV00333 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.    Location of property or permanently garaged vehicle. | |

| | A<br><br>Civil Case Cover Sheet Case Type | B<br><br>Type of Action<br>(check only one) | C<br><br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☑ 2303 Intentional Infliction of Emotional Distress | 1 ④ |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| Z.B. et. al. v Delta Air Lines, Inc., et. al. | |

| | | **A**<br>Civil Case Cover<br>Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | | ☐ 2307 Construction Accidents | 1, 4 |
| | | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Z.B. et. al. v Delta Air Lines, Inc., et. al. | |

| | | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|---|
| **Contract** (Continued) | | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | | ☐ 2602 Quiet Title | 2, 6 |
| | | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Z.B. et. al. v Delta Air Lines, Inc., et. al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE<br>Z.B. et. al. v Delta Air Lines, Inc., et. al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☐ 2. ☐ 3. ☑ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS:<br>1 World Way<br>Los Angeles, CA 90045 |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90045 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Southwest_ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: _01/30/2024_

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

1

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)

2
    *Jessica.Buckwalter@lbkmlaw.com*
1050 K Street, NW, Suite 400

3
Washington, DC 20001
Tel: (202) 833-8900; Fax: (202) 466-5738

4

Adam Kaufmann (*pro hac vice* admission pending)

5
    *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)

6
    *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Floor

7
New York NY 10017
Tel.: (212) 826-7001; Fax: (202) 826-7146

8

**AGNIFILO LAW GROUP, APC**

9
Karen Agnifilo (*pro hac vice* admission pending)
    *karen@agnifilolaw.com*

10
256 5th Avenue, New York, NY 10001
Telephone: (646) 596-2919

11

**DE CASTRO LAW GROUP, P.C.**

12
José-Manuel A. de Castro (SBN 213769)
    *jmdecastro@decastrolawgroup.com*

13
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504

14
Tel.: (310) 270-9877; Fax: (310) 341-2330

15
Attorneys for Plaintiffs

16

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17
**FOR THE COUNTY OF LOS ANGELES**

18
**[UNLIMITED CIVIL]**

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/30/2024 10:26 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Horan, Deputy Clerk

19
Z.B., a minor, and
J.B., a minor, by their guardian, S.S., and

20
S.S., an individual,

        Plaintiffs,

21

22
        vs.

DELTA AIR LINES, INC.;

23
BRIAN PATRICK DURNING;
and DOES 1 through 5, inclusive,

24
        Defendants.

25

26

27

28

---

**CASE NO.:   24TRCV00333**

**COMPLAINT FOR:**
1. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
2. **GROSS NEGLIGENCE;**
3. **NEGLIGENCE;**
4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**
5. **VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200;**
6. **ASSAULT;**
7. **SEXUAL BATTERY (CIVIL CODE § 1708.5);**
8. **BATTERY; AND**
9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

Plaintiffs Z.B. and J.B., by S.S., their guardian, and Plaintiff S.S., individually, by and through their attorneys, Lewis Baach Kaufmann Middlemiss PLLC, Agnifilo Law Group, APC, and De Castro Law Group, P.C. allege as follows:

**PRELIMINARY STATEMENT**

1.      This case arises out of the horrific sexual assault of a thirteen-year-old child during an overnight Delta Air Lines, Inc. (referred to herein as "Delta") flight from Los Angeles, California, to Orlando, Florida. What was intended as a joyful family trip turned into a life-altering, traumatic experience for a young teenager and every parent's worst nightmare. Defendant Brian Patrick Durning's (referred to herein as "Durning") sexual assault of the minor child was enabled by Defendant Delta's conduct of allowing a visibly intoxicated Durning to board the flight and continuing to serve him alcohol during the flight in violation of the law and Delta's policies and procedures. After Delta became aware of the sexual assault, Delta caused the plaintiffs to suffer further trauma and harm by forcing the minor to stay in the seat where the assault took place, seating Durning near his victim and her family, allowing Durning to roam freely about the airplane where he taunted and harassed them and, as a final indignity, allowing him to retrieve his luggage from the compartment directly above them and further taunt them as he deplaned. Delta committed these acts and omissions while being aware of the well-documented prevalence of in-flight sexual assaults, and the heightened risk of such assaults on red-eye flights.

2.      On or about June 23, 2022, two minor children Plaintiff Z.B. and Plaintiff J.B., and their mother, Plaintiff S.S. (together, referred to herein as "Plaintiffs") boarded Flight 2954 operated by Delta (referred to herein as the "Flight") at Los Angeles International Airport (referred to herein as "LAX"), for a red-eye flight that was to land on or about June 24. 2022 at Orlando International Airport (referred to herein as "MCO").  Plaintiffs were looking forward to a vacation to visit grandparents and other extended family after spending years apart due to the Covid-19 pandemic. Plaintiffs trusted Delta to uphold its duty as a common carrier to provide a safe flight for its passengers. Delta not only failed to meet that duty, but it also created a danger to Plaintiffs by allowing Durning to board the Flight in a visibly intoxicated state and continuing to serve him alcohol during the flight. Thereafter, and while in flight, Durning sexually assaulted Plaintiff Z.B. After Delta agents were made aware of the sexual assault, Delta continued to create a danger to Plaintiffs by failing to restrain Durning or move him to the back of the plane. As a result of

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

Delta's actions and inaction, Durning continued to taunt and harass Plaintiff Z.B. and her family during the remainder of the flight and deboarding process. This lawsuit seeks to hold Delta and Durning accountable for their reprehensible conduct.

3.　　　Plaintiff Z.B. is 14 years old (13 at the time of the flight), and Plaintiff J.B. is 16 years old (15 at the time of the flight). Plaintiff Z.B suffers from selective mutism, a type of anxiety disorder that renders her mute in certain situations, particularly when she is nervous, anxious, or afraid. Plaintiff J.B. has a rare chromosome disorder called Trisomy 8 Mosaicism, Autism Spectrum Disorder, and intellectual disabilities. Plaintiff Z.B. was seated apart from Plaintiff S.S. and Plaintiff J.B., in the middle seat between two strangers, one of whom was Durning.

4.　　　Taking advantage of the red-eye flight where the lights were dimmed and most of the passengers were sleeping, Durning touched Plaintiff Z.B. repeatedly, told her that he would take her to Texas and that she would never see her family again, and repeatedly sexually assaulted her. Plaintiff Z.B. was petrified and, because of her selective mutism, unable to call for help. She tried to move away from Durning in her seat but was unable to escape his physical assault. Unable to escape, and unable to call out for help, she could only sit in her seat petrified with fear as Durning groped and sexually assaulted her while touching his genitals. When the passenger sitting on the other side of Plaintiff Z.B. (referred to herein as the "Female Passenger") woke up, she saw Durning's hand moving away from Plaintiff Z.B.'s thigh. The Female Passenger demanded Durning stop his assault, alerted the flight attendant to what was happening, and sought Delta's intervention. When Durning stood up, his trousers were unzipped.

5.　　　Delta did not restrain Durning or move him to the back of the plane. Instead, they moved him to an aisle seat two rows ahead of Plaintiffs and diagonally across from them – a seat from which he continued to harass Plaintiffs. Unrestrained, Durning was free to, and did, roam about the cabin for the remainder of the Flight. Durning continued to harass the Plaintiffs, including grabbing and shaking his genitals while looking at the Plaintiffs. He also inappropriately touched the new passenger sitting next to him. After the flight landed, Delta did not restrain Durning or arrange for law enforcement to escort him off the plane. Instead, Delta allowed Durning to continue to taunt the Plaintiffs as he retrieved his luggage, and then to stand at the gate after deplaning, yell and throw his phone on the ground, and touch his genitals over his trousers while staring at Plaintiff Z.B. as she walked off the jetway.

COMPLAINT AND DEMAND FOR JURY TRIAL

Case No.:

6.      The Plaintiffs' lives have been devastated by Delta and Durning's actions. Plaintiff Z.B. struggles emotionally and physically with the effects of Durning's assault and conduct, enabled by Delta. Plaintiff Z.B.'s anxiety disorder has been severely exacerbated, and she suffers from Post-Traumatic Stress Disorder, depression, and panic attacks. She suffers from frequent nausea, is afraid of flying, has recurring nightmares about the incident, and does not want to sleep alone. Her trauma has also manifested in self-harm, including self-destructive cutting of her body, and she has developed several tics since the incident. Plaintiff Z.B. refuses to wear a bathing suit or shorts since the incident and no longer hugs family members. She fears that a man will do something to her whenever she is out in public. She has become combative with her parents and has reacted negatively to her father touching her on the shoulder. Formerly an excellent student and popular classmate, she now struggles academically, does not want to go to school and has isolated herself socially. Plaintiff J.B. suffers from severe anxiety about his sister's safety, school, and changes to his routine, and is afraid of flying, male strangers and his friends' fathers, and crowds. He has needed a one-on-one aide at school since the incident. Plaintiff J.B. suffers from nightmares from the incident and refuses to change in front of others for physical education class. He has become afraid of dark public spaces such as movie theaters and refuses to go to places outside of school or home without his mother. Plaintiff S.S. also suffers from constant anxiety about the safety and health of her children, depression, insomnia, and recurring nightmares of the incident. She struggles with everyday tasks including going to work, and the mental and emotional impact of the incident has significantly strained her marriage.

## THE PARTIES

7.      Plaintiff Z.B. is a minor child of S.S. and is 14 years old. Plaintiff Z.B. is a resident of Los Angeles County, California and is a high school student. She suffers from selective mutism, a form of anxiety disorder that renders her mute in certain situations, particularly when she is nervous, anxious, or afraid.

8.      Plaintiff J.B. is a minor child of S.S. and is 16 years old. Plaintiff J.B. is a high school student in a special education classroom. Plaintiff J.B. has Autism Spectrum Disorder, a rare genetic disorder called Trisomy 8 Mosaicism, and intellectual disabilities. Plaintiff J.B. is a resident of Los Angeles County, California.

4

9.      Plaintiff S.S. is a resident of Los Angeles County, California, and mother to Z.B. and J.B. Plaintiff S.S. works in Los Angeles County, California.

10.      Defendant Delta Air Lines, Inc. is a major air carrier that provides scheduled air transportation for passengers and cargo throughout the United States and around the world. Delta operates a large domestic and international route network and has several "hubs" across the United States, including LAX, the starting point of the Flight. Delta is a corporation organized under the laws of the state of Delaware, headquartered in Atlanta, Georgia, and regularly and systematically conducts business in the State of California, including Los Angeles County, California. At all relevant times, Delta owned, possessed, and/or controlled the Flight whereon the acts described herein occurred.

11.      Defendant Durning was a passenger on the Flight on or about June 23 to on or about June 24, 2022 from LAX to MCO. Durning is a resident of Los Angeles County, California.

12.      Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1 through 5, inclusive, and therefore sues those Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiffs will amend this Complaint to state the true names and capacities of the fictitiously named Defendants when those names are ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is legally responsible in some manner for the events and damages alleged in this Complaint under the causes of action alleged herein.

13.      Plaintiffs are informed and believe, and thereon allege, that Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or were acting in the course and scope of such agency, partnership, joint venture, association and/or employment when the acts giving rise to the causes of action occurred.

## **JURISDICTION AND VENUE**

14.      This Court has jurisdiction to hear the subject matter of this complaint because it has general subject matter jurisdiction and no statutory exceptions to jurisdiction exist.

15.      This Court has personal jurisdiction over Durning because he is a resident of California. Cal. Civ. Proc. § 410.10.

16.      This Court has personal jurisdiction over Delta because Delta has substantial, continuous

and systematic contacts with California. Cal. Civ. Proc. § 410.10.

17.     Venue is proper in this Court because Defendants reside and/or do business in Los Angeles County and some or all of the violations of law alleged herein occurred in the County of Los Angeles. Cal. Civ. Proc. § 395.

## FACTUAL ALLEGATIONS

18.     The Plaintiffs reside together in Los Angeles County, California. Plaintiffs' extended family, including elderly aunts, uncles, and grandparents, live on the East Coast of the United States. Until the Covid-19 global pandemic, Plaintiffs traveled annually to visit their extended family on the East Coast, primarily in the Orlando, Florida area. Plaintiffs were looking forward to resuming this annual tradition in 2022 and arranged to fly to Orlando, Florida on June 23, 2022. As part of this trip, Plaintiffs paid money to Delta for the purchase of three airline tickets on the Flight which was scheduled to leave LAX on June 23 in the late evening and arrive the next day, June 24, at MCO.

19.     Plaintiff S.S. was given three seat assignments on the Flight for herself and her two children: two seats in row 10 and one in row 12. All of the seats were in the "Comfort Plus" section of the airplane. The "Comfort Plus" section on Delta-operated flights refers to an area of the plane in between First Class and the main cabin, with unlimited free snack and beverage service and more legroom than in the main cabin. Specifically, Plaintiffs received seats 10A and 10B, which were the window and middle seats to the left of the aisle, and seat 12E which was a middle seat two rows behind 10A and 10B, and on the right side of the aisle.

20.     Despite her efforts to sit together with her children, Plaintiff S.S. ended up sitting with her son, J.B., in row 10 and Plaintiff Z.B. sat in row 12 in between two strangers – Durning on one side and the Female Passenger on the other.

21.     Durning reeked of alcohol and was visibly intoxicated as he boarded the flight. Once he was on the Flight, other passengers could smell the alcohol on Durning, and he visually appeared to be intoxicated. Durning has admitted that he was intoxicated prior to boarding the Flight.

22.     Delta repeatedly served alcohol to Durning during the initial hours of the flight. After the food and beverage service was completed, the lights were dimmed throughout the airplane.

23.     Durning harassed, threatened and repeatedly sexually assaulted Plaintiff Z.B. in the dark

cabin while passengers around them slept. Specifically:

    a.   Durning moved his right leg to touch Plaintiff Z.B.'s left leg;

    b.   Durning rubbed Plaintiff Z.B.'s hair and neck with his hand;

    c.   Durning touched Plaintiff Z.B.'s breasts with his hands;

    d.   Durning told Plaintiff Z.B. that he was going to take her to Texas and that she would never see her family again;

    e.   Durning called Plaintiff Z.B. "honey boo";

    f.   Durning pried open Plaintiff Z.B.'s legs and pushed his finger into her vagina over her clothes; and

    g.   Durning rubbed his genitals with his hand over his trousers, with his zipper open.

24.    Plaintiff Z.B., due to her selective mutism, was unable to cry out for help. Plaintiff Z.B. sat in her seat, terrified and crying, and tried to physically move away from Durning. When the Female Passenger woke up, she saw Durning quickly remove his hand from Plaintiff Z.B.'s upper thigh area.

25.    The Female Passenger asked Plaintiff Z.B. if "he touched you." Plaintiff Z.B. began crying and shaking in response. The Female Passenger immediately switched seats with Plaintiff Z.B. and sought the attention of Delta flight attendants.

26.    A Delta flight attendant and in-flight leader (referred to herein as the "In-Flight Leader") came to speak with the Female Passenger. The In-Flight Leader was in charge of the onboard operations of the crew, served as the liaison between the pilot and the rest of the crew, and was responsible for initiating responses to physical emergencies in the aircraft or any other incident requiring major attention. The In-Flight Leader was an employee of Delta and acting in his official capacity during the Flight. The Female Passenger informed the In-Flight Leader that Durning had inappropriately touched Plaintiff Z.B., who was a minor. The In-Flight Leader then went to get Plaintiff S.S.

27.    When the In-Flight Leader walked two rows away to alert Plaintiff S.S., Durning stretched across the Female Passenger in the direction of Plaintiff Z.B. When the Female Passenger attempted to push Durning away, he grabbed the Female Passenger's breasts. The Female Passenger pushed Durning away and warned him to stop. Despite the Female Passenger's warnings, and even after the In-Flight Leader returned with Plaintiff S.S., Durning continued to repeatedly attempt to touch the Female

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

Passenger's breasts. The Female Passenger also told the In-Flight Leader that Durning touched her breasts. Plaintiff Z.B., terrified, watched Durning sexually harass the Female Passenger repeatedly.

28.     Delta's response to learning of Durning's sexual assault on Z.B. and the Female Passenger was to keep Plaintiff Z.B. seated in row 12, where the sexual assault happened, move her mother and brother to that row to sit next to her, and move Durning to row 10 which was diagonally across from and a mere few feet away from where Plaintiffs were now sitting.  When Durning stood up to move seats his pants zipper was pulled all the way down. Plaintiff S.S. asked that Durning to be moved to a different seat where she and her children would not be able to see him, but Delta refused that request.

29.     Delta's inadequate response emboldened Durning and allowed him to continue harassing Plaintiffs for the duration of the flight. Durning repeatedly turned back to leer at the Plaintiffs, especially at Plaintiff Z.B. In addition, Delta allowed Durning to move freely about the cabin, allowing him to approach Plaintiffs and grab his genitals over his clothes and shake them at the Plaintiffs while taunting them. Delta's refusal to control or restrain Durning even extended to allowing him to roam freely in the Comfort Plus and First-Class sections of the plane.

30.     Delta's measures were also insufficient to deter or prevent Durning from harassing the passengers around him. Durning repeatedly harassed and inappropriately touched another passenger who was seated next to him. Delta flight attendants were alerted to the issue and did nothing even though Tuff Cuff restraints (stainless steel handcuffs) were readily available for use on the flight.

31.     After being made aware of the sexual assault, Delta chose not to divert the flight and remove Durning from the plane even though Durning continued his disrupting and harassing conduct. Delta further chose not to restrain Durning or move him to a seat far from Plaintiffs, even though Durning continued his disrupting and harassing conduct.

32.     Upon landing in Orlando, Florida, Delta employees did not restrain Durning or arrange for law enforcement to escort Durning off the aircraft before allowing passengers to deplane. Instead, they allowed Durning to walk freely to row 12, where the Plaintiffs were sitting, where he continued to harass them by leaning his body over them repeatedly in the direction of Plaintiff Z.B.

33.     After Durning exited the aircraft, unaccompanied by any Delta personnel, he stopped and stood facing the gate to wait for Plaintiff Z.B. so that he could harass her once more. When he saw Plaintiff

Z.B. walking down the jet bridge, Durning grabbed his groin while looking directly at her. He also threw his phone to the ground and shouted as the Plaintiffs exited the jet bridge.

34.     Eventually, Durning was arrested at MCO for his actions. On June 22, 2023, Durning was convicted of a felony for his actions on the flight towards Z.B by a jury in federal court in the United States District Court for the Middle District of Florida.

35.     In the months since the harrowing ordeal, Plaintiff Z.B. has become withdrawn and her anxiety disorder has been severely exacerbated. She experiences frequent nightmares about the incident and does not want to sleep alone. Plaintiff Z.B. suffers from Post-Traumatic Stress Disorder and Depression, frequent panic attacks and bouts of nausea since the incident, and fears that a man will do something to her whenever she is out in public. She has developed a fear of flying, refuses to wear a bathing suit or shorts since the incident, and no longer hugs family members. She has become combative with her parents and has reacted negatively to her father touching her on the shoulder. She believes that she sees Durning when out in public, or on the television. She has developed tics including blinking excessively, clearing her throat repeatedly, and tensing her neck.

36.     Plaintiff Z.B. missed more than 40 days of school in the fall semester following the incident, needing private tutoring to catch up on the classes she missed. A formerly stellar student, Plaintiff Z.B. lost motivation and interest in school. She has been regularly seeing a school counselor and a professional therapist since the incident. Plaintiff Z.B. has also engaged in the self-destructive behavior of "cutting," including using scissors to cut her thigh, which is one of the places Durning put his hands during the assault.

37.     Plaintiff J.B. suffers from nightmares about the incident. Since the incident, he has become afraid of male strangers and his friends' fathers, crowds, and flights. He has become afraid of dark public spaces such as movie theaters and refuses to go to places outside of school or home without his mother. Plaintiff J.B. suffers from anxiety regarding his sister Plaintiff Z.B.'s safety, school, and changes to his routine, and refuses to change his clothes for physical education classes. He has required the support of a one-on-one aide at school since the incident.

38.     Plaintiff S.S. suffers from nightmares about the incident and suffers from anxiety regarding her children's safety and health, panic attacks, depression, and insomnia. Plaintiff S.S. struggles with

everyday tasks including going to work, and her marriage has suffered as a result of the emotional and mental impact of the incident and its aftermath.

## FIRST CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)

39.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

40.     Delta solicits and operates a transportation service. Transportation is not incidental to Delta's business but, rather, is Delta's primary means of making money. As such, Delta is a common carrier under Civil Code § 2168 and Public Utilities Code § 211.

41.     A common carrier has a duty to use the utmost care and diligence for passengers' safety, must provide everything necessary for that purpose, and must exercise a reasonable degree of skill. Civil Code § 2100. At all material times, Delta owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual, and mental abuse posed by other passengers.

42.     At all relevant times, Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or was acting in the course and scope of such agency, partnership, joint venture, association and/or employment.

43.     The outrageous acts and/or omissions by Delta and Does 1 through 5 intentionally or recklessly caused severe emotional distress to Plaintiffs including, but not limited to, the following:

   a.   when they allowed Durning to board the Flight in a visibly intoxicated state;

   b.   when they allowed Durning to take his seat in a visibly intoxicated state;

   c.   when they served Durning multiple drinks while Durning was in a visibly intoxicated state;

   d.   when they failed to restrain Durning and allowed him to roam free in the cabin when directly warned by the Female Passenger of Durning's assault of Plaintiff Z.B. and herself;

   e.   when they failed to restrain Durning and allowed him to roam free in the cabin when

10

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

directly warned by another passenger of Durning's continuing harassment of other passengers;

f.   when they failed to restrain Durning and allowed him to roam free in the cabin after having actual knowledge of Durning's continuing harassment of Plaintiffs Z.B., J.B., and S.S; and

g.   when they failed to escort or allow law enforcement to escort Durning off the aircraft and keep him away from Plaintiffs after having actual knowledge of Durning's assault on Plaintiff Z.B. and continuing harassment of Plaintiffs.

44.   Delta and Does 1 through 5 acted with intent or recklessness, knowing that Plaintiffs would likely endure severe emotional distress from an intoxicated passenger's outrageous conduct, especially given Plaintiffs' relative lack of power or control over their situation or ability to report a crime while passengers on the Flight.

45.   Delta and Does 1 through 5 acted with intent or recklessness, by failing to take adequate safety measures to protect Plaintiffs after receiving actual notice that Durning had sexually assaulted Plaintiff Z.B. and another passenger, knowing that Plaintiffs would likely continuously endure severe emotional distress from Durning's outrageous conduct, who was intoxicated, seated only two rows away from Plaintiffs, and unrestrained throughout the flight and when exiting the aircraft.

46.   As a direct and proximate result of the above acts and/or omissions by Delta and Does 1 through 5, Plaintiffs have suffered and continue to suffer substantial and permanent injuries, in an amount to be determined according to proof, including but not limited to: severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

47.   In subjecting Plaintiffs to the wrongful acts herein described Delta and Does 1 through 5 acted intentionally or recklessly with a willful and conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiffs are therefore entitled to the recovery

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

of punitive damages against Delta and Does 1 through 5, in an amount to be determined according to proof.

### SECOND CAUSE OF ACTION

### GROSS NEGLIGENCE

### (ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)

48.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 47 above as though fully set forth and brought in this cause of action.

49.    Delta is a common carrier under Civil Code § 2168 and Public Utilities Code § 211, and as such owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual and mental abuse posed by other passengers. The risk of in-flight sexual abuse, assault or harassment by passengers, including intoxicated passengers, was a foreseeable risk in light of the prevalence of such instances. The Plaintiffs were paying customers on the Flight and Delta owed them the highest degree of care in providing for their safety.

50.    At all relevant times, Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or was acting in the course and scope of such agency, partnership, joint venture, association and/or employment.

51.    It has been public knowledge for several years that in-flight sexual assault is a pervasive issue, and that such assaults are more likely to occur on red-eye flights. In June 2018, the FBI published an article commenting on the increase in reported cases of in-flight sexual assault.[1]  The FBI noted that there was a 66% increase in the number of such cases reported to the FBI from fiscal year 2014 to fiscal year 2017, and also that the "attacks generally occur on long-haul flights when the cabin is dark."[2]  The number of in-flight sexual assault investigations opened by the FBI increased again from 63 to 119 in the year 2019, showing a 89% increase from the year 2018.[3]

---

[1]  *Sexual Assault Aboard Aircraft: Raising Awareness About a Serious Federal Crime*, FBI News (Apr. 26, 2018), https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618.

[2]  *Id.*

[3]  Justin Gray, *Sexual Assaults on Airplanes on the Rise, FBI Warns*, WSB-TV (Feb. 3, 2020, 12:09 PM), https://www.wsbtv.com/news/2-investigates/sexual-assaults-airplane-rise-fbi-warns/HZRVB762XVGONC53ZFNSUCJXQA/.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

52.     A report published by the International Air Transport Association reported 812 incidents of physical aggression, obscene or lewd physical contact, or conduct causing damage to aircraft fixtures or equipment during the year 2018.[4]

53.     News media have reported on multiple cases of passenger-on-passenger in-flight sexual assault for years,[5] including in particular cases of in-flight sexual assaults of children traveling unaccompanied by an adult or seated separately from their guardian.[6]

54.     In particular, Delta knew numerous in-flight sexual assaults that occurred on flights that it operated, including, but not limited to, the following instances. In 2016, an intoxicated man performed a sex act on himself and sexually assaulted a woman sitting next to him on a flight operated by ExpressJet, which is operated by Delta.[7]   In 2017, a man sexually assaulted a female passenger on a Delta flight from Charlottesville, Virginia to Atlanta, Georgia.[8]   In 2018, a 23-year-old woman was sexually assaulted by

---

[4]   Int'l Air Transp. Ass'n, *Safety Report 2018* at 111-12 (Apr. 2019), https://www.iata.org/contentassets/4d18cb077c5e419b8a888d387a50c638/iata-safety-report-2018.pdf.

[5]   *See, e.g.*, Julia Marnin, *Sleeping woman wakes up twice to passenger groping her on red-eye flight to NJ, feds say*, Miami Herald (Sept. 4, 2023, 2:53 PM), https://www.miamiherald.com/news/nation-world/national/article278951299.html; *Delta passenger sues airline, claims crew didn't detain passenger who sexually assaulted her on flight*, Fox News (Sept. 28, 2018, 10:12 AM), https://www.foxnews.com/travel/delta-passenger-sues-airline-claims-crew-didnt-detain-passenger-who-sexually-assaulted-her-on-flight; Allison Dvaladze, *Airline industry treats sexual assaults in the skies like an inconvenience, not a crime*, USA Today (Apr. 1, 2019, 6:00 AM), https://www.usatoday.com/story/opinion/voices/2019/04/01/sexual-assault-airlineflight-elaine-chaotrump-boeing-column/3312204002/; Christopher Mele, *Sexual Assault on Flights: Experts Recommend Ways to Stay Safe and Combat It*, N.Y. Times (Mar. 23, 2019), https://www.nytimes.com/2019/03/23/travel/airline-flights-sexual-assault.html; David Oliver, *Passenger indicted for alleged mid-flight sexual assault of 19-year-old woman*, USA Today (May 21, 2019, 3:50 PM), https://www.usatoday.com/story/travel/flights/2019/05/21/united-airlines-passengerallegessexual-assault/3751023002/.

[6]   Robert Arnold, *Houston area teen reports being molested on flight to California*, Click2Houston (June 6, 2023, 9:53 AM), https://www.click2houston.com/news/investigates/2023/06/06/houston-area-teen-reports-being-molested-on-flight-to-california/; Amy Clancy, *Seattle teen: United Airlines 'negligent' for in-flight sexual assault*, Kiro7 (May 21, 2019, 11:35 PM), https://www.kiro7.com/news/local/tonight-at-5-30-seattle-teen-united-airlines-negligent-for-in-flight-sexual-assault/950947481/; Michael Miller, *'This was 30 minutes of hell for this lady': Unaccompanied minor groped on flight*, The Washington Post (June 20, 2016, 6:33 AM), https://www.washingtonpost.com/news/morning-mix/wp/2016/06/20/this-was-30-minutes-of-hell-for-this-young-lady-unaccompanied-minor-groped-on-flight/.

[7]   Oralandar Brand-Williams, *Woman sues Delta Airlines over sex assault on flight*, The Detroit News (June 13, 2017, 3:28 PM), https://www.detroitnews.com/story/news/local/wayne-county/2017/06/13/passenger-sues-delta-airlines-sex-assault/102813688/.

[8]   Raisa Habersham, *FBI: Man threw pretzel bag, groped woman on Delta flight to Atlanta*, The Atlanta Journal-Constitution (Mar. 14, 2018), https://www.ajc.com/news/crime--law/fbi-man-threw-pretzel-bag-groped-woman-delta-flight-atlanta/s6Ock8D4UFUtD4JVf5xgqM/.

---

13

an intoxicated male passenger on a Delta flight from Chicago, Illinois to Los Angeles, California.[9]   In 2019, a woman was sexually assaulted on a Delta flight from Atlanta, Georgia to Germany by a neighboring passenger while she was sleeping.[10]   In 2021, a man sexually assaulted a 19-year-old woman sitting next to him on a Delta flight from the Netherlands to Detroit, Michigan, while she was sleeping and the cabin lights were dimmed.[11]

55.   As an air carrier, Delta and Does 1 through 5 violated laws, regulations, and policies by including, but not limited to, the following:

    a.   allowing Durning to board the Flight in a visibly intoxicated state;

    b.   allowing Durning to take his seat in a visibly intoxicated state; and

    c.   serving Durning multiple drinks while Durning was in a visibly intoxicated state.

56.   Delta and Does 1 through 5 breached their duties as a common carrier and violated that heightened degree of care owed to Plaintiffs by including, but not limited to, the following:

    a.   failing to have or enforce adequate policies and procedures to prevent and properly respond to in-flight sexual assaults;

    b.   allowing Durning to board the Flight in a visibly intoxicated state;

    c.   allowing Durning to take his seat in a visibly intoxicated state;

    d.   serving Durning multiple drinks while Durning was in a visibly intoxicated state;

    e.   failing to act adequately when directly warned by the Female Passenger of Durning's assault of Plaintiff Z.B. and herself;

    f.   failing to act adequately when directly warned by another passenger of Durning's continuing harassment of other passengers; and

---

[9]   Ewan Palmer, *Delta Passenger Says She Was Sexually Assaulted on Flight and Given $200 Coupon to Make Up For It,* Newsweek (July 24, 2018, 11:15 AM), https://www.newsweek.com/delta-passenger-says-she-was-sexually-assaulted-flight-and-given-200-coupon-1039773.

[10]   Nikki McGee, *Murfreesboro couple sues Delta Airlines after alleged in-flight sexual assault*, WKRN.com (Apr. 29, 2021, 10:31 PM), https://www.wkrn.com/news/local-news/murfreesboro-couple-sues-delta-airlines-after-alleged-in-flight-sexual-assault/.

[11]   Derick Hutchinson, *Man who sexually assaulted woman in middle seat of Delta flight to Detroit claims he was asleep, feds say*, Click On Detroit (Apr. 20, 2022, 8:00 AM), https://www.clickondetroit.com/news/local/2022/04/20/man-who-sexually-assaulted-woman-in-middle-seat-of-delta-flight-to-detroit-claims-he-was-asleep-feds-say/.

g. failing to act adequately after having actual knowledge of Durning's continuing harassment of Plaintiffs Z.B., J.B., and S.S.

57. The above-mentioned actions and/or omissions by Delta and Does 1 through 5, when viewed objectively, involved an extreme degree of risk and constituted an extreme departure from the ordinary standard of conduct, considering the probability and magnitude of the potential harm to others.

58. Delta and Does 1 through 5 had actual, subjective awareness of this risk, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs. The gross negligence of Delta and Does 1 through 5, especially by ignoring its own policies and credible reports that Durning had sexually assaulted passengers including a minor child, and by failing to take meaningful steps to protect Plaintiffs, was a proximate cause of the assaults and harassment that Plaintiffs suffered and of the damages and injuries alleged herein.

59. The above acts and/or omissions by Delta and Does 1 through 5 were a proximate cause of the physical damage, severe emotional distress, and physical manifestations of severe emotional distress that Plaintiffs Z.B., J.B. and S.S. have suffered and continue to suffer in an amount to be determined according to proof.

60. Plaintiffs J.B. and S.S., the brother and mother of Plaintiff Z.B., were in the same airplane cabin as Plaintiff Z.B., seated next to Plaintiff Z.B., or walking next to Plaintiff Z.B. during the injuries that Plaintiff Z.B. suffered. Plaintiffs J.B. and S.S. were aware that Delta's grossly negligent and careless injury-producing conduct was causing injury to Plaintiff Z.B. because they were alerted to Durning's conduct by the Female Passenger, and because they witnessed Durning's subsequent conduct after he was moved to row 10.

61. As a direct and proximate result of witnessing the injury to Plaintiff Z.B. caused by the grossly negligent and careless conduct of Delta and Does 1 through 5, and because they also received and observed taunts and sexual gestures when they were sitting next to Plaintiff Z.B., Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

62. As a result of this gross negligence, Plaintiffs are entitled to and seek exemplary damages in an amount to be determined according to proof.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

63.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 62 above as though fully set forth and brought in this cause of action.

64.    As a common carrier, Delta owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual and mental abuse posed by other passengers.

65.    The above-mentioned acts and/or omissions by Delta and Does 1 through 5 constituted a breach of that duty.

66.    As a direct, legal, and proximate result of the acts and/or omissions by Delta and Does 1 through 5, Plaintiffs Z.B., J.B. and S.S. suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

67.    Plaintiffs J.B. and S.S., the brother and mother of Plaintiff Z.B., were in the same airplane cabin as Plaintiff Z.B., seated next to Plaintiff Z.B., or walking next to Plaintiff Z.B. during the injuries that Plaintiff Z.B. suffered. Plaintiffs J.B. and S.S. were aware that Delta's negligent injury-producing conduct was causing injury to Plaintiff Z.B. because they were alerted of Durning's conduct by the Female Passenger, or because they witnessed Durning's subsequent conduct after he was moved to row 10.

68.    As a direct, legal, and proximate result of witnessing the injury to Plaintiff Z.B. caused by the negligent conduct of Delta and Does 1 through 5, Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

///

///

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

**FOURTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

69.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 68 above as though fully set forth and brought in this cause of action.

70.     Delta and Does 1 through 5 owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual, and mental abuse posed by other passengers.

71.     While on board the Flight, the Plaintiffs had limited mobility, were unable to escape from Durning, or report a crime to the authorities on their own.

72.     Delta and Does 1 through 5 knew or should have known that Plaintiffs who experienced and witnessed in-flight sexual assault and were treated poorly or inadequately in the aftermath would experience severe emotional distress.

73.     Delta and Does 1 through 5 could reasonably foresee that their actions and/or omissions would cause severe emotional distress to Plaintiffs.

      a.  Delta and Does 1 through 5 could reasonably foresee that allowing Durning, a visibly intoxicated passenger, to board the aircraft and then providing Durning with more alcoholic beverages while seated next to an unaccompanied child created a heightened risk of sexual assault which Delta and Does 1 through 5 failed to mitigate or address.

      b.  After being notified of the assault of Plaintiff Z.B., Delta and Does 1 through 5 failed to take adequate measures that would prevent Durning from continuing to harass Plaintiff Z.B, Plaintiff J.B., and Plaintiff S.S.

      c.  Delta and Does 1 through 5 could reasonably foresee that after Plaintiff Z.B. was sexually assaulted on the Flight, seating Durning only a few feet away from Plaintiffs would further cause Plaintiffs severe emotional distress.

      d.  Delta and Does 1 through 5 could reasonably foresee that Durning, who remained intoxicated and unrestrained for the rest of the Flight, would likely cause harm to Plaintiffs and other passengers.

17

74.     Through the above-described actions and/or omissions, Delta and Does 1 through 5 failed to exercise utmost care and negligently caused severe emotional distress to Plaintiffs.

75.     As a direct, legal, and proximate result of the acts and/or omissions by Delta and Does 1 through 5, Plaintiffs Z.B., J.B. and S.S. suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

76.     Plaintiffs J.B. and S.S are immediate family members of Plaintiff Z.B. They were also passengers on the Flight located just a few feet away from Plaintiff Z.B. during the assault of Plaintiff Z.B. As a direct and proximate result of witnessing the injury to Plaintiff Z.B. caused by the negligent conduct of Delta and Does 1 through 5, Plaintiffs J.B. and S.S. suffered and continue to suffer substantial and permanent injuries, including severe emotional distress and physical manifestations of severe emotional distress, including anxiety, humiliation, loss of enjoyment of life, fear of flying, inability to perform daily activities, and other physical and emotional injuries in an amount to be determined according to proof.

77.     As a direct, legal, and proximate result of the negligent conduct by Delta and Does 1 through 5 that allowed Durning to continue to harass Plaintiffs J.B. and S.S., Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

## FIFTH CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

### (ALL PLAINTIFFS AGAINST DELTA)

78.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 77 above as though fully set forth and brought in this cause of action.

79.     Delta's conduct as described herein constitutes a "business practice" under the Business & Professions Code, Section 17200, et seq. ("Section 17200").

80.     Under California law, Section 17200 "borrows" violations of other laws, including common law, and treats them as unlawful practices independently actionable under Section 17200.

81.     Delta has engaged in unlawful conduct within the meaning of Section 17200 by virtue of Delta's acts and omissions which violate common law and constitute negligence, gross negligence, negligent infliction of emotional distress and/or intentional infliction of emotional distress. As described herein, those acts and omissions include but are not limited to, allowing a visibly intoxicated person to board the plane, allowing a visibly intoxicated person to take his seat on the plane, continuing to serve a visibly intoxicated person alcohol during the flight, forcing Plaintiff Z.B., a minor, to stay in the seat where the assault took place after they had knowledge of the assault, sitting Durning near Plaintiff Z.B., his victim, and her family and not moving him to the back of the plane, refusing to control or restrain Durning and allowing him to roam free in the cabin after being told of his sexual assault of a minor, refusing to control or restrain Durning and allowing him to roam free in the cabin after learning of Durning's continuing harassment of Plaintiffs and other passengers, allowing Durning to retrieve his luggage from the compartment directly above Plaintiffs while they were forced to stay in their seats and endure Durning's further harassment of them, and failing and/or refusing to escort or allow law enforcement to escort Durning off the aircraft and keep him away from Plaintiffs thereby providing another opportunity for Durning to wait for his victim and harass her and Plaintiff J.B. and Plaintiff S.S. once more.

82.     As a direct and foreseeable result of Delta's violation of Section 17200, Plaintiffs have suffered and continue to suffer economic harm and substantial irreparable harm as described herein. Plaintiffs are therefore entitled to relief.

## SIXTH CAUSE OF ACTION

### ASSAULT

### (PLAINTIFF Z.B. AGAINST DURNING)

83.     Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

84.     Durning, with intent to cause harmful or offensive contact, touched Plaintiff Z.B. in the lower leg, upper thigh, vaginal area, and breasts.

85.     Plaintiff Z.B. reasonably believed that she was about to be touched in a harmful offensive manner, in light of Durning calling her "honey boo," and telling her that he would take her to Texas and that she would never see her family again, and in light of each prior instance of harmful or offensive contact by Durning.

86.     Plaintiff Z.B. did not consent to Durning's conduct.

87.     As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks,  loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.  In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

## SEVENTH CAUSE OF ACTION

### SEXUAL BATTERY (CIVIL CODE § 1708.5)

### (PLAINTIFF Z.B. AGAINST DURNING)

88.     Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

89.     Durning touched Plaintiff Z.B. in the groin, vaginal area, and breasts.

90.     Durning committed the acts set forth herein with the intent to cause harmful or offensive contact with an intimate part or parts of Plaintiff Z.B.'s person and that would offend a reasonable sense of personal dignity. The acts by Durning did in fact cause a harmful or offensive contact with Plaintiff Z.B.'s person that would offend a reasonable person in Plaintiff Z.B.'s situation.

91.     Plaintiff Z.B. did not give consent to Durning's conduct.

92.     As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to

proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

93.    In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

## **EIGHTH CAUSE OF ACTION**

### **BATTERY**

### **(PLAINTIFF Z.B. AGAINST DURNING)**

94.    Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

95.    Durning touched Plaintiff Z.B. in the leg, groin, vaginal area, and breasts.

96.    Durning committed the acts set forth herein with the intent to cause a harmful or offensive contact with Plaintiff Z.B.'s person and that would offend a reasonable sense of personal dignity. Further, said acts by Durning did cause a harmful or offensive contact with Plaintiff Z.B.'s person that would offend a reasonable person in Plaintiff Z.B.'s situation.

97.    Plaintiff Z.B. did not consent to the touching.

98.    Plaintiff Z.B. was harmed by Durning's inappropriate and wrongful conduct.

99.    As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

100.    In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully

and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

**NINTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS AGAINST DURNING)**

101.   Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

102.   Durning intentionally touched Plaintiff Z.B. on her lower legs, thigh, groin, vaginal area, and breasts. Durning pleasured himself over his clothing both while forcibly touching Plaintiff Z.B. on the Flight and while looking at Plaintiff Z.B. as she and the other Plaintiffs were disembarking from the aircraft at MCO.

103.   Durning pleasured himself over his clothing while leering at Plaintiffs while on the Flight. Durning intentionally verbally harassed Plaintiffs on multiple occasions during the Flight and after it landed. Durning grabbed his genitals and shook them at Plaintiffs and taunted them while on the Flight.

104.   Durning's conduct was extreme, outrageous, and had a severe and traumatic effect upon the mental and emotional tranquility of Plaintiffs.

105.   As an actual and proximate result of the intentional and malicious acts of Durning, Plaintiffs suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

106.   In subjecting Plaintiffs to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiffs and with a willful and conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiffs are therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

1

**PRAYER FOR RELIEF**

2     Wherefore, Plaintiffs pray:

3     1.     For past, present, and future non-economic damages, in an amount to be determined at trial;

4     2.     For past, present, and future special damages, including but not limited to past, present,

5 and future lost earnings, economic damages and others, in an amount to be determined at trial;

6     3.     For exemplary and punitive damages in an amount deemed sufficient by the trier of fact to

7 punish, deter, and make an example of Defendants and to be determined at the time of trial;

8     4.     For costs and expenses of suit, including expert witness fees;

9     5.     For reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5

10 and/or any other applicable provision providing for attorneys' fees;

11     6.     For interest based on damages, as well as pre-judgment and post-judgment interest as

12 allowed by law; and

13     7.     For any other equitable and further relief as the Court may deem proper.

14

**REQUEST FOR JURY TRIAL**

15     Plaintiffs Z.B., J.B., and S.S. hereby demand a trial by jury on all issues.

16

17 Dated: January 30, 2024     Respectfully submitted,
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

18

19 By: /s/ Jessica R. Lobis Buckwalter
Jessica R. Lobis Buckwalter (SBN 199200)
20 Adam Kaufmann (*pro hac vice* admission pending)
Li Jiang (SBN 292940)

21

22 **AGNIFILO LAW GROUP, APC**

23 By: /s/ Karen Agnifilo
Karen Agnifilo (*pro hac vice* admission pending)

24 **DE CASTRO LAW GROUP, P.C.**

25

26 By: /s/ José-Manuel A. de Castro
José-Manuel A. de Castro (SBN 213769)

27 *Attorneys for Plaintiffs*

28

23



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

**What is ADR?**
ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

**Advantages of ADR**
- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

**Disadvantages of ADR**
- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

**Main Types of ADR**
1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

    **Mediation may be appropriate when the parties**
    - want to work out a solution but need help from a neutral person.
    - have communication problems or strong emotions that interfere with resolution.

    **Mediation may not be appropriate when the parties**
    - want a public trial and want a judge or jury to decide the outcome.
    - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com
     (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org
     (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
   https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit
   https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

| | | | |
|---|---|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | | Reserved for Clerk's File Stamp | |

COURTHOUSE ADDRESS:
Torrance Courthouse
825 Maple Avenue, Torrance, CA 90503

**NOTICE OF CASE ASSIGNMENT**

**UNLIMITED CIVIL CASE**

**FILED**
Superior Court of California
County of Los Angeles

01/30/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ M. Horan _____ Deputy

**Your case is assigned for all purposes to the judicial officer indicated below.**

CASE NUMBER:
24TRCV00333

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Douglas W. Stern | B | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 02/05/2024
　　(Date)

David W. Slayton, Executive Officer / Clerk of Court

By M. Horan _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

02/08/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ J. Williams _____ Deputy

COURTHOUSE ADDRESS:
Torrance Courthouse
825 Maple Avenue, Torrance, CA 90503

PLAINTIFF:
Z. B.  et al

DEFENDANT:
DELTA AIR LINES, INC., et al.

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
24TRCV00333

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 04/30/2024      Time: 8:30 AM      Dept.: B

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 02/08/2024

_____
Judicial Officer
Douglas W. Stern / Judge

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Torrance , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Jose-Manuel de Castro
7590 N. Glenoaks Blvd. Suite 201
Los Angeles, CA 91504

David W. Slayton, Executive Officer / Clerk of Court

Dated: 02/08/2024

By J. Williams
_____
Deputy Clerk

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

LASC LACIV 132 Rev. 01/23
For Optional Use

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

CIV-010/FL-935

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| Jessica R. Lobis Buckwalter (SBN 199200); Lewis Baach Kaufmann Middlemiss, PLLC; 1050 K. Street, NW, Suite 400, Washington D.C. 20001; Email: jessica.buckwalter@lbkmlaw.com; Tel: (202) 833-8900; Fax: (202) 466-5738<br><br>José-Manuel  A de Castro (SBN 213769); De Castro Law Group, P.C.; 7590 N. Glenoaks Blvd., Suite 201, Los Angeles, CA 91504; Email: jmdecastro@decastroloawgroup.com; Tel: (310) 270-9877; Fax (310) 341-2330 | **Electronically FILED by Superior Court of California, County of Los Angeles 2/13/2024 9:08 AM David W. Slayton, Executive Officer/Clerk of Court, By M. Horan, Deputy Clerk** |

ATTORNEY FOR (name): **Z.B. and J.B., through their guardian, and S.S.**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS: 825 Maple Ave.

MAILING ADDRESS:

CITY AND ZIP CODE: Torrance, 90503

BRANCH NAME: Torrance Courthouse

PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.
DEFENDANT/RESPONDENT: Delta Air Lines, Inc., Brian Patrick Durning and DOES 1-5
OTHER PARENT/PARTY:

| **APPLICATION FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL AND FAMILY LAW**  [ x ] **EX PARTE** | CASE NUMBER:<br>24TRCV00333 |
|---|---|

*This form is for use in a civil or family law proceeding in which a party is a minor, a person who lacks legal capacity to make decisions, or a person for whom a conservator has been appointed. A person who seeks the appointment of a guardian ad litem in a proceeding under the Probate Code—other than a proceeding under Probate Code sections 3500–3613 for approval of a compromise, settlement, or disposition of judgment proceeds—should use form DE-350/GC-100. **NOTE:** A person may not act as a guardian ad litem unless the person is represented by an attorney, is an attorney, or, in an action under the Uniform Parentage Act (Family Code, §§ 7600–7730), is an adult relative of a minor party.*

1. I (applicant's name): S.S.
   am (check all that apply):
   a. [ x ] the parent of (name): J.B.
   b. [ ] the guardian of (name):
   c. [ ] the conservator of (name):
   d. [ x ] a party to the suit.
   e. [ ] the minor to be represented (if the minor is 14 years of age or older).
   f. [ ] another interested person (specify capacity):

2. I am asking the court to appoint the following person as guardian ad litem (name, address, phone number, and email address):

   S.S. c/o Lewis Baach Kaufmann Middlemiss, 1050 K. Street, NW, Suite 400, Washington D.C. 20001; 202-833-8900; jessica.buckwalter@lbkmlaw.com

3. The guardian ad litem will represent the interest of (name, address, and, if applicable, phone number and email address):

   J.B. c/o Lewis Baach Kaufmann Middlemiss, 1050 K. Street, NW, Suite 400, Washington D.C. 20001; 202-833-8900; jessica.buckwalter@lbkmlaw.com

4. The person named in item 3 is a party and is (check all that apply):
   a. [ x ] a minor (date of birth): 12/29/2006
   b. [ ] a person who lacks legal capacity to make decisions (explain the basis for claiming lack of capacity):

   [ ] Continued on Attachment 4b.
   c. [ ] a person for whom a conservator has been appointed (provide the details of the appointment):

   [ ] Continued on Attachment 4c.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010/FL-935 [Rev. January 1, 2024] | **APPLICATION FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL AND FAMILY LAW** | Code of Civil Procedure, § 372 et seq.;<br>Family Code, §§ 6229, 7635<br>www.courts.ca.gov |
|---|---|---|

CIV-010/FL-935

| PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.<br>DEFENDANT/RESPONDENT: Delta Air Lines, Inc., Brian Patrick Durning and DOES 1-5<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>24TRCV00333 |
|---|---|

5. [x] The person named in item 3 is a minor and is (check one):
  a. [x] a plaintiff or petitioner in this action and the summons has not been issued.
  b. [ ] a defendant or respondent in this action. More than 10 days have passed since service of the summons, and no one has applied for the appointment of a guardian ad litem.

6. I am asking the court to appoint a guardian ad litem because the person named in item 3 (check all that apply):
  a. [ ] is a minor who is a party to an action under the Uniform Parentage Act (Family Code, §§ 7600–7730).
  b. [ ] is a minor who is requesting or opposing a request for an injunction or restraining order described in Code of Civil Procedure sections 372(b)(1) and 374(a). (If the minor is 12 years of age or older, check one of the following):
      The minor [ ] does [ ] does not object to the appointment of the person named in item 2.
      [ ] I don't know whether the minor objects to the appointment of the person named in item 2.
  c. [x] has no guardian or conservator of the estate.
  d. [ ] has a guardian or conservator of the estate, but the guardian or conservator is inadequate to represent the person's interest in this action or proceeding because (explain):

      [ ] Continued on Attachment 6d.
      The guardian or conservator of the estate is (name, address, telephone number, and email address):

      (After filing this application, you must give notice and a copy of the application to the guardian or conservator above.)

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person named in item 3.

Jessica R. Lobis Buckwalter
_____
(TYPE OR PRINT NAME)

▶ _Jessica Buckwalter_
_____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

S.S.
_____
(TYPE OR PRINT NAME)

▶ _SS_
_____
(SIGNATURE OF APPLICANT)

### DISCLOSURES AND CONSENT TO ACT AS GUARDIAN AD LITEM

8. I have the following relationship with the person named in item 3 (check one):
  a. [ ] No relationship
  b. [x] A familial relationship (specify): mother
  c. [ ] An affiliate (nonfamilial) relationship (specify):

9. I am (check one):
  a. [x] not aware of any actual or potential conflicts of interest that would or might arise from the appointment.
  b. [ ] aware of the following actual or potential conflicts that would or might arise from the appointment (describe the actual or potential conflicts of interest and explain why the proposed guardian should still be appointed):

      [ ] Continued on Attachment 9b.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. I consent to act as guardian ad litem in this action or proceeding. If I become aware that a potential conflict of interest has become an actual conflict, or that a new potential or actual conflict exists, I will promptly disclose the conflict of interest to the court.

Date:

S.S.
_____
(TYPE OR PRINT NAME)

▶ _SS_
_____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

CIV-010/FL-935 [Rev. January 1, 2024]

**APPLICATION FOR APPOINTMENT OF**
**GUARDIAN AD LITEM—CIVIL AND FAMILY LAW**

Page 2 of 2

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ] [ Save this form ] [ Clear this form ]

CIV-010/FL-935

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| Jessica R. Lobis Buckwalter (SBN 199200); Lewis Baach Kaufmann Middlemiss, PLLC; 1050 K. Street NW, Suite 400, Washington D.C. 20001; Email: jessica.buckwalter@lbkmlaw.com; Tel: (202) 833-8900; Fax: (202) 466-5738<br><br>José-Manuel A. de Castro (SBN 213769); De Castro Law Group, P.C.; 7590 N. Glenoaks Blvd., Suite 201, Los Angeles, CA 91504; Email: jmdecastro@decastrolawgroup.com; Tel: (310) 270-9877; Fax (310) 341-2330 | **Electronically FILED by Superior Court of California, County of Los Angeles 2/13/2024 9:08 AM David W. Slayton, Executive Officer/Clerk of Court, By M. Horan, Deputy Clerk** |
| ATTORNEY FOR (name): Z.B. and J.B., through their guardian, and S.S. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 825 Maple Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Torrance, 90503
BRANCH NAME: Torrance Courthouse

PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.
DEFENDANT/RESPONDENT: Delta Air Lines, Inc., Brian Patrick Durning and DOES 1-5
OTHER PARENT/PARTY:

| APPLICATION FOR APPOINTMENT OF<br>GUARDIAN AD LITEM—CIVIL AND FAMILY LAW<br>[ x ] EX PARTE | CASE NUMBER:<br>24TRCV00333 |
|---|---|

*This form is for use in a civil or family law proceeding in which a party is a minor, a person who lacks legal capacity to make decisions, or a person for whom a conservator has been appointed. A person who seeks the appointment of a guardian ad litem in a proceeding under the Probate Code—other than a proceeding under Probate Code sections 3500–3613 for approval of a compromise, settlement, or disposition of judgment proceeds—should use form DE-350/GC-100. NOTE: A person may not act as a guardian ad litem unless the person is represented by an attorney, is an attorney, or, in an action under the Uniform Parentage Act (Family Code, §§ 7600–7730), is an adult relative of a minor party.*

1. I *(applicant's name):* S.S.
   am *(check all that apply):*
   a. [ x ] the parent of *(name):* Z.B.
   b. [ ] the guardian of *(name):*
   c. [ ] the conservator of *(name):*
   d. [ x ] a party to the suit.
   e. [ ] the minor to be represented *(if the minor is 14 years of age or older).*
   f. [ ] another interested person *(specify capacity):*

2. I am asking the court to appoint the following person as guardian ad litem *(name, address, phone number, and email address):*

   S.S. c/o Lewis Baach Kaufmann Middlemiss, 1050 K. Street, NW, Suite 400, Washington D.C. 20001; 202-833-8900; jessica.buckwalter@lbkmlaw.com

3. The guardian ad litem will represent the interest of *(name, address, and, if applicable, phone number and email address):*

   Z.B. c/o Lewis Baach Kaufmann Middlemiss, 1050 K. Street, NW, Suite 400, Washington D.C. 20001; 202-833-8900; jessica.buckwalter@lbkmlaw.com

4. The person named in item 3 is a party and is *(check all that apply):*
   a. [ x ] a minor *(date of birth):* 06/17/2009
   b. [ ] a person who lacks legal capacity to make decisions *(explain the basis for claiming lack of capacity):*

   [ ] Continued on Attachment 4b.
   c. [ ] a person for whom a conservator has been appointed *(provide the details of the appointment):*

   [ ] Continued on Attachment 4c.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010/FL-935 [Rev. January 1, 2024] | APPLICATION FOR APPOINTMENT OF<br>GUARDIAN AD LITEM—CIVIL AND FAMILY LAW | Code of Civil Procedure, § 372 et seq.;<br>Family Code, §§ 6229, 7635<br>www.courts.ca.gov |
|---|---|---|

CIV-010/FL-935

| PLAINTIFF/PETITIONER: Z.B. and J.B., through their guardian, and S.S.<br>DEFENDANT/RESPONDENT: Delta Air Lines, Inc., Brian Patrick Durning and DOES 1-5<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>24TRCV00333 |
|---|---|

5.  [ x ] The person named in item 3 is a minor and is *(check one)*:
   a. [ x ] a plaintiff or petitioner in this action and the summons has not been issued.
   b. [   ] a defendant or respondent in this action. More than 10 days have passed since service of the summons, and no one has applied for the appointment of a guardian ad litem.

6.  I am asking the court to appoint a guardian ad litem because the person named in item 3 *(check all that apply)*:
   a. [   ] is a minor who is a party to an action under the Uniform Parentage Act (Family Code, §§ 7600–7730).
   b. [   ] is a minor who is requesting or opposing a request for an injunction or restraining order described in Code of Civil Procedure sections 372(b)(1) and 374(a). *(If the minor is 12 years of age or older, check one of the following)*:
      The minor [   ] does [   ] does not object to the appointment of the person named in item 2.
      [   ] I don't know whether the minor objects to the appointment of the person named in item 2.
   c. [ x ] has no guardian or conservator of the estate.
   d. [   ] has a guardian or conservator of the estate, but the guardian or conservator is inadequate to represent the person's interest in this action or proceeding because *(explain)*:

   [   ] Continued on Attachment 6d.
   The guardian or conservator of the estate is *(name, address, telephone number, and email address)*:

   *(After filing this application, you must give notice and a copy of the application to the guardian or conservator above.)*

7.  The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person named in item 3.

Jessica R. Lobis Buckwalter                                    ▶ *Jessica Buckwalter*
_____                              _____
(TYPE OR PRINT NAME)                                           (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

S.S.                                                           ▶ *SS*
_____                              _____
(TYPE OR PRINT NAME)                                           (SIGNATURE OF APPLICANT)

### DISCLOSURES AND CONSENT TO ACT AS GUARDIAN AD LITEM

8.  I have the following relationship with the person named in item 3 *(check one)*:
   a. [   ] No relationship
   b. [ x ] A familial relationship *(specify)*: mother
   c. [   ] An affiliate (nonfamilial) relationship *(specify)*:

9.  I am *(check one)*:
   a. [ x ] not aware of any actual or potential conflicts of interest that would or might arise from the appointment.
   b. [   ] aware of the following actual or potential conflicts that would or might arise from the appointment *(describe the actual or potential conflicts of interest and explain why the proposed guardian should still be appointed)*:

   [   ] Continued on Attachment 9b.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. I consent to act as guardian ad litem in this action or proceeding. If I become aware that a potential conflict of interest has become an actual conflict, or that a new potential or actual conflict exists, I will promptly disclose the conflict of interest to the court.

Date:

S.S.                                                           ▶ *SS*
_____                              _____
(TYPE OR PRINT NAME)                                           (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

| CIV-010/FL-935 [Rev. January 1, 2024] | **APPLICATION FOR APPOINTMENT OF**<br>**GUARDIAN AD LITEM—CIVIL AND FAMILY LAW** | Page 2 of 2 |

For your protection and privacy, please press the Clear This Form button after you have printed the form.   [ Print this form ]   [ Save this form ]                [ Clear this form ]

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)
    *Jessica.Buckwalter@lbkmlaw.com*
1050 K Street, NW, Suite 400
Washington, DC 20001
Ph: (202) 833-8900; Fax: (202) 466-5738

Adam Kaufmann (*pro hac vice* admission pending)
    *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)
    *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Floor
New York NY 10017
Ph: (212) 826-7001; Fax: (202) 826-7146

**AGNIFILO LAW GROUP, APC**
Karen Agnifilo (*pro hac vice* admission pending)
    *karen@agnifilolaw.com*
256 5th Avenue, New York, NY 10001
Telephone: (646) 596-2919

**DE CASTRO LAW GROUP, P.C.**
José-Manuel A. de Castro (SBN 213769)
    *jmdecastro@decastrolawgroup.com*
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504
Ph: (310) 270-9877; Fax: (310) 341-2330

Attorneys for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/09/2024 5:12 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Davila, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – TORRANCE COURTHOUSE

| | |
|---|---|
| Z.B., a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DELTA AIR LINES, INC.,<br>BRIAN PATRICK DURNING,<br>and DOES 1 through 5, inclusive,<br><br>        Defendants. | CASE NO.: 24TRCV00333<br><br>***EX PARTE* APPLICATION FOR AN ORDER ALLOWING PLAINTIFFS' GUARDIAN AD LITEM TO PROCEED UNDER A PSEUDONYM PURSUANT TO CODE OF CIVIL PROCEDURE § 372.5; AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed Concurrently with Declaration of Jessica R. Lobis Buckwalter; Applications and Orders For Appointment of Guardian Ad Litem; and [Proposed] Order]*<br><br>Date:  February 14, 2024<br>Time:  8:30 a.m.<br>Dept.:  B<br>Judge: Hon. Douglas W. Stern |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 14, 2024, at 8:30 a.m., or as soon thereafter, as the matter may be heard in Department B of the above-entitled court, located at 825 Maple Ave, Torrance, CA, 90503, Plaintiffs Z.B. and J.B., by their guardian ad litem, and through their attorneys of record, will appear *ex parte* for an order granting permission for S.S. to appear in the Complaint as Z.B. and J.B.'s guardian ad litem under such fictitious designation pursuant to section 372.5 of the Code of Civil Procedure.

There is good cause to grant the instant *Ex Parte* Application on the grounds that identifying S.S. by name will effectively reveal the identities of Z.B. and J.B. because S.S. is their mother. Z.B. and J.B. are minors who seek to remain anonymous in this action wherein they pursue their right to be made whole against Defendants Delta Air Lines, Inc. ("Delta") and Brian Patrick Durning ("Durning"). Delta allowed a visibly intoxicated Durning to board a flight and continued to serve him alcohol, thus enabling Durning's sexual assault of Z.B during the flight. After Delta agents were made aware of the sexual assault, Delta continued to create a danger to Plaintiffs by failing to restrain Durning or move him to a seat a reasonable distance removed from Plaintiffs. As a result of Delta's actions and inaction, Durning continued to taunt and harass Plaintiffs, and as a result, Defendants caused Plaintiffs to suffer further trauma and harm.

Z.B. and J.B. will suffer irreparable harm if this Application is not granted. Without the anonymity of S.S., Z.B. and J.B. will forever have their name tied to events that caused them tremendous pain and emotional trauma as children. In order to further protect the interests of Z.B. and J.B., it is respectfully requested that this Court allow their mother and guardian ad litem to proceed under the pseudonym S.S.

This *Ex Parte* Application is made pursuant to Code of Civil Procedure Section 372.5(b), and is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Applications and Orders for Appointment of Guardian ad Litem, the Declaration of Jessica R. Lobis Buckwalter, the records and files in this action, and upon further evidence and argument as may be presented prior to or at the time of hearing on this Application.

///

///

///

Dated: February 9, 2024

Respectfully submitted,

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

By: /s/ Jessica R. Lobis Buckwalter
Jessica R. Lobis Buckwalter (SBN 199200)
Adam Kaufmann (*pro hac vice* admission pending)
Li Jiang (SBN 292940)

**AGNIFILO LAW GROUP, APC**

By: /s/ Karen Agnifilo
Karen Agnifilo (*pro hac vice* admission pending)

**DE CASTRO LAW GROUP, P.C.**

By: /s/ José-Manuel A. de Castro
José-Manuel A. de Castro (SBN 213769)

*Attorneys for Plaintiffs*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**   <u>**INTRODUCTION**</u>

Plaintiff Z.B., a minor, and Plaintiff J.B., a minor, by and through their guardian ad litem, hereby move, *ex parte*, pursuant to section 372.5(b) of the Code of Civil Procedure for an order granting permission for their mother and Plaintiff S.S. to appear in the Complaint as Z.B. and J.B.'s guardian ad litem under a fictitious designation, S.S.

**II.**   <u>**FACTUAL BACKGROUND**</u>

The instant action arises out of the horrific sexual assault of Z.B. during an overnight Delta Air Lines, Inc. ("Delta") flight by an intoxicated passenger, Defendant Brian Patrick Durning ("Durning"). Delta enabled Durning's conduct by allowing him to board the flight while visibly intoxicated and continuing to serve him alcohol during the flight.

After Delta became aware of Durning's sexual assault, Delta continued to create a danger to Plaintiffs by its actions and inactions, including but not limited to, forcing Z.B. to stay in the seat where the assault took place, seating Durning near Plaintiffs, allowing Durning to roam freely about the airplane where he taunted and harassed Plaintiffs, and, allowing him to retrieve his luggage from the compartment directly above Plaintiffs and further taunt them as he deplaned. Plaintiffs suffered further trauma and harm as a result.

In today's digital age, if this application is not granted, Z.B. and J.B.'s true names will become readily obtainable. Z.B. and J.B. wish to protect their identities from disclosure to prevent their names from becoming publicly known and forever intertwined with this traumatic incident and its aftermath.

**III.**   <u>**LEGAL ARGUMENT**</u>

**A.**   <u>**An *Ex Parte* Application is Procedurally Required to Appoint a Guardian Ad Litem Using a Pseudonym.**</u>

Because Z.B. and J.B. are minors, they must appear in their complaint through "a guardian ad litem appointed by the court in which the action or proceeding is pending." Code Civ. Proc., § 372, sub. (a). Such appointments may be made on *ex parte* applications utilizing mandatory Judicial Counsel Form CIV-010, which are filed concurrently herewith. *In re Marriage of Caballero* (1994)

1   27 Cal.App.4th 1139, 1149. As set forth in those forms and as discussed below, S.S., the mother of

2   Z.B. and J.B., is seeking to use a pseudonym in lieu of her real name.

3        Furthermore, Code of Civil Procedure Section 372.5(b) requires that an *ex parte* request for

4   leave to appear under a pseudonym be filed at the same time as the application to appoint a guardian

5   ad litem. As such, pursuant to the requisite procedure and the facts and circumstances described

6   below, there is good cause to grant this *Ex Parte* Application.

7        **B.   This Court Should Permit Z.B. and J.B.'s Guardian Ad Litem to Proceed Under**

8        **a Pseudonym.**

9        Pursuant to Section 372.5 of the California Code of Civil Procedure, the Court may appoint

10  a guardian ad litem under a pseudonym when: (1) the applicant has an overriding interest in

11  preserving anonymity that supports permitting the applicant to appear under a pseudonym; (2) there

12  is a substantial probability that the applicant's interest in preserving anonymity will be prejudiced if

13  the applicant is not permitted to appear under a pseudonym; (3) permitting the applicant to appear

14  under a pseudonym is narrowly tailored to serve the applicant's interest in preserving anonymity

15  without unduly prejudicing the public's right of access or the ability of the other parties to prosecute,

16  defend, or resolve the action; and (4) there are no less restrictive means of protecting the applicant's

17  interest in preserving his or her anonymity. (Code Civ. Proc., § 372.5, subds. (a) and (c).).

18       As set forth below, this case meets each of these requirements.

19       **1.   There Is an Overriding Interest in Preserving S.S.'s Anonymity So As to**

20       **Protect Her Children's Identity and Privacy.**

21       The interest in preserving S.S.'s anonymity is based entirely on the desire to protect Z.B. and

22  J.B.'s best interests. Courts have regularly upheld the right of plaintiffs to bring a claim under

23  pseudonyms when these legitimate privacy rights are implicated. *See Starbucks Corp. v. Superior*

24  *Court* (2008) 168 Cal.App.4th 1436, 1452 n. 7. Such legitimate privacy rights are implicated where

25  "anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature."

26  *Doe v. Lincoln Unified School Dist.* (2010) 188 Cal.App.4th 758, 767 *quoting Does I thru XXIII v.*

27  *Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058, 1068. Actions alleging a child's sexual abuse

28  are appropriate circumstances for a plaintiff's use of a pseudonym. *See Doe v. Lincoln Unified*

1 *School Dist., supra,* at 766-67 (and cases cited therein).

2     The purpose of a guardian ad litem is to protect the minor's interests in the litigation. *Briggs*

3 *v. Briggs* (1958) 160 Cal.App.2d 312, 319; *In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453.

4 Here, S.S., as the mother of Z.B. and J.B., is an appropriate person to look out for Z.B. and J.B.'s

5 interests in this case. Consistent with the intent to protect Z.B. and J.B.'s interests, the facts of this

6 case demonstrate the need for S.S. to proceed under a pseudonym. An online search of S.S.'s true

7 name leads to certain public websites where S.S. appears with the same last name as Z.B. and J.B.

8 Thus, anyone searching online using S.S.'s true name could easily discover Z.B. and J.B.'s identities.

9 It would be inconsistent to protect Z.B. and J.B.'s anonymity with a pseudonym only to reveal their

10 identity by requiring their guardian ad litem to proceed under the guardian ad litem's true name.

11     The protection of Z.B. and J.B.'s confidentiality is an overriding interest that can only be

12 achieved by preserving S.S.'s anonymity. Accordingly, Z.B. and J.B. request that their guardian ad

13 litem, S.S., be permitted to proceed in this litigation through the use of a pseudonym.

14     **2.**     <u>**There Is a Substantial Probability That The Interests in Preserving the**</u>

15     <u>**Anonymity of Z.B and J.B. Will Suffer Prejudice If S.S. is Required to**</u>

16     <u>**Utilize Her True Name**</u>.

17     Z.B. is a survivor of sexual assault. Both she and J.B. have suffered severe and lasting injuries

18 as a result of the horrific incident. Keeping their true names protected aides in protecting their

19 privacy interests and their brave pursuit of accountability in this case. If S.S. is required to use her

20 true name, Z.B. and J.B.'s identity will undoubtedly be revealed. As a result, Z.B. and J.B. will have

21 their names forever tied to the traumatic incident that they seek to move on from. It is extremely

22 likely that this lawsuit will be significantly publicized due to the shocking nature of the incident and

23 Delta's involvement as a major airline that operates flights all over the world. With the ever-present

24 influence of the Internet and social media platforms, tying Z.B. and J.B.'s true names to this case

25 will cause further mental and emotional trauma and suffering and also impact them both in high

26 school and beyond.

27     As such, revealing Z.B. and J.B.'s identities through the use of S.S.'s true name would have

28 a substantial probability of causing prejudice to their interest in maintaining anonymity and

1 protecting Z.B. and J.B.'s privacy and emotional wellbeing.

2        **3.        Permitting S.S. to Appear Under a Pseudonym Is Narrowly Tailored and**
3               **There Are No Less Restrictive Means to Preserve Anonymity.**

4        The final two issues that must be considered are whether permitting the applicant to appear
5 under a pseudonym is narrowly tailored to serve the applicant's interest in preserving anonymity
6 without unduly prejudicing the public's right of access or the ability of the other parties to prosecute,
7 defend, or resolve the action and whether there are no less restrictive means for preserving the
8 applicant's anonymity.

9        As S.S.'s use of a pseudonym is confined to this particular case, the permission to appear
10 under a pseudonym is narrowly tailored. Allowing S.S. to appear under a pseudonym does not
11 unduly burden the public's right to access, nor does it prevent the Defendants from litigating the
12 case. The use of a pseudonym allows the public to access the case, while preserving the Plaintiffs'
13 right to privacy. Furthermore, the use of a pseudonym by S.S. will have no effect on Defendants'
14 ability to defend or resolve the action, as the Defendants will have access to plaintiffs' true names
15 as part of the litigation and discovery process. Defendants will simply be prevented from
16 disseminating the true names to the general public.

17        Lastly, there are no less restrictive means for preserving S.S.'s identity than the use of a
18 pseudonym. This method of confidentiality only entails changing the names of the plaintiffs and
19 guardian ad litem to a pseudonym. Moreover, the use of pseudonyms is a common practice in civil
20 litigation and recognized as the least restrictive way to protect a person's privacy rights. *See Doe v.*
21 *Lincoln Unified School District*, supra, 188 Cal.App.4th at 766 (finding that there have been
22 "countless published state court decisions where one or more of the parties have used fictitious
23 names").

24        The use of a pseudonym in this case is a narrowly tailored and an efficient way to avoid
25 impinging on the public's constitutional right to access, and it is a commonly used, least restrictive,
26 method of protecting their privacy interests.

27 **IV.    CONCLUSION**

28        For the reasons stated above, Z.B. and J.B. respectfully request this Court order that their

1  guardian ad litem, S.S., be permitted to proceed under a fictitious designation pursuant to section

2  372.5, subdivisions (a) and (b) of the Code of Civil Procedure.

3    Dated: February 09, 2024             Respectfully submitted,

4                                    **LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

5                                    By:  /s/ Jessica R. Lobis Buckwalter

6                                    Jessica R. Lobis Buckwalter (SBN 199200)
Adam Kaufmann (*pro hac vice* admission pending)

7                                    Li Jiang (SBN 292940)

8                                    **AGNIFILO LAW GROUP, APC**

9                                    By:  /s/ Karen Agnifilo

10                                    Karen Agnifilo (*pro hac vice* admission pending)

11                                    **DE CASTRO LAW GROUP, P.C.**

12                                    By:  /s/ José-Manuel A. de Castro

13                                    José-Manuel A. de Castro (SBN 213769)

14                                    *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)
    *Jessica.Buckwalter@lbkmlaw.com*
1050 K Street, NW, Suite 400
Washington, DC 20001
Ph: (202) 833-8900; Fax: (202) 466-5738

Adam Kaufmann (*pro hac vice* admission pending)
    *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)
    *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Floor
New York NY 10017
Ph: (212) 826-7001; Fax: (202) 826-7146

**AGNIFILO LAW GROUP, APC**
Karen Agnifilo (*pro hac vice* admission pending)
    *karen@agnifilolaw.com*
256 5th Avenue, New York, NY 10001
Telephone: (646) 596-2919

**DE CASTRO LAW GROUP, P.C.**
José-Manuel A. de Castro (SBN 213769)
    *jmdecastro@decastrolawgroup.com*
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504
Ph: (310) 270-9877; Fax: (310) 341-2330

Attorneys for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/09/2024 5:12 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Davila, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – TORRANCE COURTHOUSE

| | |
|---|---|
| Z.B., a minor, and J.B., a minor, by their guardian, S.S., and S.S., an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>DELTA AIR LINES, INC., BRIAN PATRICK DURNING, and DOES 1 through 5, inclusive,<br><br>Defendants. | CASE NO.: 24TRCV00333<br><br>**DECLARATION OF JESSICA R. LOBIS BUCKWALTER IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER ALLOWING PLAINTIFFS' GUARDIAN AD LITEM TO PROCEED UNDER A PSEUDONYM**<br><br>*[Filed Concurrently with Ex Parte Application; Memorandum of Points and Authorities; Applications and Orders For Appointment of Guardian Ad Litem; and [Proposed] Order]*<br><br>Date:   February 14, 2024<br>Time:   8:30 a.m.<br>Dept.:  B<br>Judge:  Hon. Douglas W. Stern |

1

## DECLARATION OF JESSICA R. LOBIS BUCKWALTER

I, Jessica R. Lobis Buckwalter, declare as follows:

1.      I am an attorney, duly licensed to practice law in the State of California and the District of Columbia. I am a partner with the law firm of Lewis Baach Kaufmann Middlemiss PLLC, counsel of record for Plaintiffs Z.B., J.B., and S.S. ("Plaintiffs") in this action. The facts stated herein are within my personal knowledge and if called upon to testify, I can truthfully and competently do so as to all matters herein.

2.      I make this declaration in support of Plaintiffs Z.B. and J.B.'s *Ex Parte* Application for an Order Allowing Plaintiffs' Guardian Ad Litem to Proceed Under a Pseudonym, as described below.

3.      On January 30, 2024 Plaintiffs commenced the instant action in Los Angeles Superior Court against Delta Air Lines, Inc. ("Delta"), Brian Patrick Durning ("Durning"), and Does 1 through 5 for claims of (1) Intentional Infliction of Emotional Distress; (2) Gross Negligence; (3) Negligence; (4) Negligent Infliction of Emotional Distress; (5) Violation of Business and Professions Code § 17200; (6) Assault; (7) Sexual Battery (Civil Code § 1708.5); (8) Battery; and (9) Intentional Infliction of Emotional Distress. A true and correct copy of the Complaint is attached hereto as **Exhibit "A."**

4.      In the Complaint, Plaintiffs allege that their claims are based on a series of incidents that occurred on a flight operated by Delta, which included the sexual assault of Z.B. by Durning and taunting and harassment of Plaintiffs by Durning, and the actions and inactions by Delta that enabled Durning's assault and enabled him to further taunt and harass Plaintiffs.

5.      Z.B. and J.B. are in high school and are minors. S.S. is the mother of Z.B. and J.B.

6.      Due to the nature of the allegations in the Complaint, which include the sexual assault of minor Z.B., Plaintiffs wish to protect their privacy by keeping their identities anonymous and the identity of S.S., Z.B. and J.B.'s guardian ad litem, anonymous.

7.      As Plaintiffs' attorney, I am aware that an online search of S.S.'s true name leads to certain public websites where S.S. appears with the same last name as Z.B. and J.B. If S.S.'s name was revealed, it would be very easy to determine the identities of Z.B. and J.B. and it is

1   likely that their identities would be publicly revealed.

2        8.    In light of the nature of the allegations in the Complaint, and articles that I have

3 personally reviewed about other sexual assaults that have occurred on airlines, I believe that

4 Plaintiffs' lawsuit will likely garner public attention. As a result of that attention, I believe that

5 Plaintiffs Z.B. and J.B. are at risk of suffering scrutiny and public shame by their peers if this *Ex*

6 *Parte* Application is not granted.  Furthermore, given that this case involves the sexual assault of

7 a minor and given the likelihood of public attention from both press and social media, if this *Ex*

8 *Parte* Application is not granted, Plaintiff Z.B's name will be forever intertwined with the very

9 events that caused her physical and emotional trauma.

10        9.    Thus, good cause exists to grant this *Ex Parte* Application as Z.B. and J.B. will

11 suffer irreparable harm by having their names revealed as a result of their guardian ad litem being

12 unable to proceed under a pseudonym.

13        10.    Notice is not provided to any opposing party because there is not yet an opposing

14 party who can be served, as the summons cannot be issued until the guardian ad litem has been

15 appointed pursuant to Cal. Code Civ. Proc. § 373(a).

16        11.    Code of Civil Procedure Section 372.5, subsection (b) requires that an *ex parte*

17 request be filed at the same time as the application seeking leave to appear under a pseudonym.

18 As such, for the reasons set forth herein and in the *Ex Parte* Application, there is an overriding

19 interest in preserving the guardian ad litem's anonymity and I respectfully request that this

20 Court permit Plaintiffs Z.B. and J.B.'s guardian ad litem to appear under a pseudonym.

21       I declare under penalty of perjury under the laws of the State of California that the

22 foregoing is true and correct and that this declaration was executed on February 9, 2024 in the

23 District of Columbia.

24

25                            Jessica R. Lobis Buckwalter

26

27

28

# EXHIBIT A

**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
Jessica R. Lobis Buckwalter (SBN 199200)
    *Jessica.Buckwalter@lbkmlaw.com*
1050 K Street, NW, Suite 400
Washington, DC 20001
Tel: (202) 833-8900; Fax: (202) 466-5738

Adam Kaufmann (*pro hac vice* admission pending)
    *Adam.Kaufmann@lbkmlaw.com*
Li Jiang (SBN 292940)
    *Li.Jiang@lbkmlaw.com*
10 Grand Central, 155 East 44th St., 25th Floor
New York NY 10017
Tel.: (212) 826-7001; Fax: (202) 826-7146

**AGNIFILO LAW GROUP, APC**
Karen Agnifilo (*pro hac vice* admission pending)
    *karen@agnifilolaw.com*
256 5th Avenue, New York, NY 10001
Telephone: (646) 596-2919

**DE CASTRO LAW GROUP, P.C.**
José-Manuel A. de Castro (SBN 213769)
    *jmdecastro@decastrolawgroup.com*
7590 N. Glenoaks Blvd., Suite 201
Los Angeles, CA 91504
Tel.: (310) 270-9877; Fax: (310) 341-2330

Attorneys for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/30/2024 10:26 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Horan, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

### [UNLIMITED CIVIL]

| | |
|---|---|
| Z.B., a minor, and<br>J.B., a minor, by their guardian, S.S., and<br>S.S., an individual,<br><br>        Plaintiffs,<br><br>        vs.<br><br>DELTA AIR LINES, INC.;<br>BRIAN PATRICK DURNING;<br>and DOES 1 through 5, inclusive,<br><br>        Defendants. | **CASE NO.:**   24TRCV00333<br><br>**COMPLAINT FOR:**<br>1. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>2. **GROSS NEGLIGENCE;**<br>3. **NEGLIGENCE;**<br>4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>5. **VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200;**<br>6. **ASSAULT;**<br>7. **SEXUAL BATTERY (CIVIL CODE § 1708.5);**<br>8. **BATTERY; AND**<br>9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Z.B. and J.B., by S.S., their guardian, and Plaintiff S.S., individually, by and through their attorneys, Lewis Baach Kaufmann Middlemiss PLLC, Agnifilo Law Group, APC, and De Castro Law Group, P.C. allege as follows:

**PRELIMINARY STATEMENT**

1.       This case arises out of the horrific sexual assault of a thirteen-year-old child during an overnight Delta Air Lines, Inc. (referred to herein as "Delta") flight from Los Angeles, California, to Orlando, Florida. What was intended as a joyful family trip turned into a life-altering, traumatic experience for a young teenager and every parent's worst nightmare. Defendant Brian Patrick Durning's (referred to herein as "Durning") sexual assault of the minor child was enabled by Defendant Delta's conduct of allowing a visibly intoxicated Durning to board the flight and continuing to serve him alcohol during the flight in violation of the law and Delta's policies and procedures. After Delta became aware of the sexual assault, Delta caused the plaintiffs to suffer further trauma and harm by forcing the minor to stay in the seat where the assault took place, seating Durning near his victim and her family, allowing Durning to roam freely about the airplane where he taunted and harassed them, and, as a final indignity, allowing him to retrieve his luggage from the compartment directly above them and further taunt them as he deplaned. Delta committed these acts and omissions while being aware of the well-documented prevalence of in-flight sexual assaults, and the heightened risk of such assaults on red-eye flights.

2.       On or about June 23, 2022, two minor children Plaintiff Z.B. and Plaintiff J.B., and their mother, Plaintiff S.S. (together, referred to herein as "Plaintiffs") boarded Flight 2954 operated by Delta (referred to herein as the "Flight") at Los Angeles International Airport (referred to herein as "LAX"), for a red-eye flight that was to land on or about June 24. 2022 at Orlando International Airport (referred to herein as "MCO").  Plaintiffs were looking forward to a vacation to visit grandparents and other extended family after spending years apart due to the Covid-19 pandemic. Plaintiffs trusted Delta to uphold its duty as a common carrier to provide a safe flight for its passengers. Delta not only failed to meet that duty, but it also created a danger to Plaintiffs by allowing Durning to board the Flight in a visibly intoxicated state and continuing to serve him alcohol during the flight. Thereafter, and while in flight, Durning sexually assaulted Plaintiff Z.B. After Delta agents were made aware of the sexual assault, Delta continued to create a danger to Plaintiffs by failing to restrain Durning or move him to the back of the plane. As a result of

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

Delta's actions and inaction, Durning continued to taunt and harass Plaintiff Z.B. and her family during the remainder of the flight and deboarding process. This lawsuit seeks to hold Delta and Durning accountable for their reprehensible conduct.

3.      Plaintiff Z.B. is 14 years old (13 at the time of the flight), and Plaintiff J.B. is 16 years old (15 at the time of the flight). Plaintiff Z.B suffers from selective mutism, a type of anxiety disorder that renders her mute in certain situations, particularly when she is nervous, anxious, or afraid. Plaintiff J.B. has a rare chromosome disorder called Trisomy 8 Mosaicism, Autism Spectrum Disorder, and intellectual disabilities. Plaintiff Z.B. was seated apart from Plaintiff S.S. and Plaintiff J.B., in the middle seat between two strangers, one of whom was Durning.

4.      Taking advantage of the red-eye flight where the lights were dimmed and most of the passengers were sleeping, Durning touched Plaintiff Z.B. repeatedly, told her that he would take her to Texas and that she would never see her family again, and repeatedly sexually assaulted her. Plaintiff Z.B. was petrified and, because of her selective mutism, unable to call for help. She tried to move away from Durning in her seat but was unable to escape his physical assault. Unable to escape, and unable to call out for help, she could only sit in her seat petrified with fear as Durning groped and sexually assaulted her while touching his genitals. When the passenger sitting on the other side of Plaintiff Z.B. (referred to herein as the "Female Passenger") woke up, she saw Durning's hand moving away from Plaintiff Z.B.'s thigh. The Female Passenger demanded Durning stop his assault, alerted the flight attendant to what was happening, and sought Delta's intervention. When Durning stood up, his trousers were unzipped.

5.      Delta did not restrain Durning or move him to the back of the plane. Instead, they moved him to an aisle seat two rows ahead of Plaintiffs and diagonally across from them – a seat from which he continued to harass Plaintiffs. Unrestrained, Durning was free to, and did, roam about the cabin for the remainder of the Flight. Durning continued to harass the Plaintiffs, including grabbing and shaking his genitals while looking at the Plaintiffs. He also inappropriately touched the new passenger sitting next to him. After the flight landed, Delta did not restrain Durning or arrange for law enforcement to escort him off the plane. Instead, Delta allowed Durning to continue to taunt the Plaintiffs as he retrieved his luggage, and then to stand at the gate after deplaning, yell and throw his phone on the ground, and touch his genitals over his trousers while staring at Plaintiff Z.B. as she walked off the jetway.

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

6.     The Plaintiffs' lives have been devastated by Delta and Durning's actions. Plaintiff Z.B. struggles emotionally and physically with the effects of Durning's assault and conduct, enabled by Delta. Plaintiff Z.B.'s anxiety disorder has been severely exacerbated, and she suffers from Post-Traumatic Stress Disorder, depression, and panic attacks. She suffers from frequent nausea, is afraid of flying, has recurring nightmares about the incident, and does not want to sleep alone. Her trauma has also manifested in self-harm, including self-destructive cutting of her body, and she has developed several tics since the incident. Plaintiff Z.B. refuses to wear a bathing suit or shorts since the incident and no longer hugs family members. She fears that a man will do something to her whenever she is out in public. She has become combative with her parents and has reacted negatively to her father touching her on the shoulder. Formerly an excellent student and popular classmate, she now struggles academically, does not want to go to school and has isolated herself socially. Plaintiff J.B. suffers from severe anxiety about his sister's safety, school, and changes to his routine, and is afraid of flying, male strangers and his friends' fathers, and crowds. He has needed a one-on-one aide at school since the incident. Plaintiff J.B. suffers from nightmares from the incident and refuses to change in front of others for physical education class. He has become afraid of dark public spaces such as movie theaters and refuses to go to places outside of school or home without his mother. Plaintiff S.S. also suffers from constant anxiety about the safety and health of her children, depression, insomnia, and recurring nightmares of the incident. She struggles with everyday tasks including going to work, and the mental and emotional impact of the incident has significantly strained her marriage.

## THE PARTIES

7.     Plaintiff Z.B. is a minor child of S.S. and is 14 years old. Plaintiff Z.B. is a resident of Los Angeles County, California and is a high school student. She suffers from selective mutism, a form of anxiety disorder that renders her mute in certain situations, particularly when she is nervous, anxious, or afraid.

8.     Plaintiff J.B. is a minor child of S.S. and is 16 years old. Plaintiff J.B. is a high school student in a special education classroom. Plaintiff J.B. has Autism Spectrum Disorder, a rare genetic disorder called Trisomy 8 Mosaicism, and intellectual disabilities. Plaintiff J.B. is a resident of Los Angeles County, California.

9.      Plaintiff S.S. is a resident of Los Angeles County, California, and mother to Z.B. and J.B. Plaintiff S.S. works in Los Angeles County, California.

10.      Defendant Delta Air Lines, Inc. is a major air carrier that provides scheduled air transportation for passengers and cargo throughout the United States and around the world. Delta operates a large domestic and international route network and has several "hubs" across the United States, including LAX, the starting point of the Flight. Delta is a corporation organized under the laws of the state of Delaware, headquartered in Atlanta, Georgia, and regularly and systematically conducts business in the State of California, including Los Angeles County, California. At all relevant times, Delta owned, possessed, and/or controlled the Flight whereon the acts described herein occurred.

11.      Defendant Durning was a passenger on the Flight on or about June 23 to on or about June 24, 2022 from LAX to MCO. Durning is a resident of Los Angeles County, California.

12.      Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1 through 5, inclusive, and therefore sues those Defendants by fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiffs will amend this Complaint to state the true names and capacities of the fictitiously named Defendants when those names are ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is legally responsible in some manner for the events and damages alleged in this Complaint under the causes of action alleged herein.

13.      Plaintiffs are informed and believe, and thereon allege, that Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or were acting in the course and scope of such agency, partnership, joint venture, association and/or employment when the acts giving rise to the causes of action occurred.

## JURISDICTION AND VENUE

14.      This Court has jurisdiction to hear the subject matter of this complaint because it has general subject matter jurisdiction and no statutory exceptions to jurisdiction exist.

15.      This Court has personal jurisdiction over Durning because he is a resident of California. Cal. Civ. Proc. § 410.10.

16.      This Court has personal jurisdiction over Delta because Delta has substantial, continuous

and systematic contacts with California. Cal. Civ. Proc. § 410.10.

17.     Venue is proper in this Court because Defendants reside and/or do business in Los Angeles County and some or all of the violations of law alleged herein occurred in the County of Los Angeles. Cal. Civ. Proc. § 395.

## FACTUAL ALLEGATIONS

18.     The Plaintiffs reside together in Los Angeles County, California. Plaintiffs' extended family, including elderly aunts, uncles, and grandparents, live on the East Coast of the United States. Until the Covid-19 global pandemic, Plaintiffs traveled annually to visit their extended family on the East Coast, primarily in the Orlando, Florida area. Plaintiffs were looking forward to resuming this annual tradition in 2022 and arranged to fly to Orlando, Florida on June 23, 2022. As part of this trip, Plaintiffs paid money to Delta for the purchase of three airline tickets on the Flight which was scheduled to leave LAX on June 23 in the late evening and arrive the next day, June 24, at MCO.

19.     Plaintiff S.S. was given three seat assignments on the Flight for herself and her two children: two seats in row 10 and one in row 12. All of the seats were in the "Comfort Plus" section of the airplane. The "Comfort Plus" section on Delta-operated flights refers to an area of the plane in between First Class and the main cabin, with unlimited free snack and beverage service and more legroom than in the main cabin. Specifically, Plaintiffs received seats 10A and 10B, which were the window and middle seats to the left of the aisle, and seat 12E which was a middle seat two rows behind 10A and 10B, and on the right side of the aisle.

20.     Despite her efforts to sit together with her children, Plaintiff S.S. ended up sitting with her son, J.B., in row 10 and Plaintiff Z.B. sat in row 12 in between two strangers – Durning on one side and the Female Passenger on the other.

21.     Durning reeked of alcohol and was visibly intoxicated as he boarded the flight. Once he was on the Flight, other passengers could smell the alcohol on Durning, and he visually appeared to be intoxicated. Durning has admitted that he was intoxicated prior to boarding the Flight.

22.     Delta repeatedly served alcohol to Durning during the initial hours of the flight. After the food and beverage service was completed, the lights were dimmed throughout the airplane.

23.     Durning harassed, threatened and repeatedly sexually assaulted Plaintiff Z.B. in the dark

cabin while passengers around them slept. Specifically:

    a.   Durning moved his right leg to touch Plaintiff Z.B.'s left leg;

    b.   Durning rubbed Plaintiff Z.B.'s hair and neck with his hand;

    c.   Durning touched Plaintiff Z.B.'s breasts with his hands;

    d.   Durning told Plaintiff Z.B. that he was going to take her to Texas and that she would never see her family again;

    e.   Durning called Plaintiff Z.B. "honey boo";

    f.   Durning pried open Plaintiff Z.B.'s legs and pushed his finger into her vagina over her clothes; and

    g.   Durning rubbed his genitals with his hand over his trousers, with his zipper open.

24.    Plaintiff Z.B., due to her selective mutism, was unable to cry out for help. Plaintiff Z.B. sat in her seat, terrified and crying, and tried to physically move away from Durning. When the Female Passenger woke up, she saw Durning quickly remove his hand from Plaintiff Z.B.'s upper thigh area.

25.    The Female Passenger asked Plaintiff Z.B. if "he touched you."  Plaintiff Z.B. began crying and shaking in response. The Female Passenger immediately switched seats with Plaintiff Z.B. and sought the attention of Delta flight attendants.

26.    A Delta flight attendant and in-flight leader (referred to herein as the "In-Flight Leader") came to speak with the Female Passenger. The In-Flight Leader was in charge of the onboard operations of the crew, served as the liaison between the pilot and the rest of the crew, and was responsible for initiating responses to physical emergencies in the aircraft or any other incident requiring major attention. The In-Flight Leader was an employee of Delta and acting in his official capacity during the Flight. The Female Passenger informed the In-Flight Leader that Durning had inappropriately touched Plaintiff Z.B., who was a minor. The In-Flight Leader then went to get Plaintiff S.S.

27.    When the In-Flight Leader walked two rows away to alert Plaintiff S.S., Durning stretched across the Female Passenger in the direction of Plaintiff Z.B. When the Female Passenger attempted to push Durning away, he grabbed the Female Passenger's breasts. The Female Passenger pushed Durning away and warned him to stop. Despite the Female Passenger's warnings, and even after the In-Flight Leader returned with Plaintiff S.S., Durning continued to repeatedly attempt to touch the Female

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

1   Passenger's breasts. The Female Passenger also told the In-Flight Leader that Durning touched her breasts.

2   Plaintiff Z.B., terrified, watched Durning sexually harass the Female Passenger repeatedly.

3   28.   Delta's response to learning of Durning's sexual assault on Z.B. and the Female Passenger

4   was to keep Plaintiff Z.B. seated in row 12, where the sexual assault happened, move her mother and

5   brother to that row to sit next to her, and move Durning to row 10 which was diagonally across from and

6   a mere few feet away from where Plaintiffs were now sitting.  When Durning stood up to move seats his

7   pants zipper was pulled all the way down. Plaintiff S.S. asked that Durning to be moved to a different seat

8   where she and her children would not be able to see him, but Delta refused that request.

9   29.   Delta's inadequate response emboldened Durning and allowed him to continue harassing

10   Plaintiffs for the duration of the flight. Durning repeatedly turned back to leer at the Plaintiffs, especially

11   at Plaintiff Z.B. In addition, Delta allowed Durning to move freely about the cabin, allowing him to

12   approach Plaintiffs and grab his genitals over his clothes and shake them at the Plaintiffs while taunting

13   them. Delta's refusal to control or restrain Durning even extended to allowing him to roam freely in the

14   Comfort Plus and First-Class sections of the plane.

15   30.   Delta's measures were also insufficient to deter or prevent Durning from harassing the

16   passengers around him. Durning repeatedly harassed and inappropriately touched another passenger who

17   was seated next to him. Delta flight attendants were alerted to the issue and did nothing even though Tuff

18   Cuff restraints (stainless steel handcuffs) were readily available for use on the flight.

19   31.   After being made aware of the sexual assault, Delta chose not to divert the flight and

20   remove Durning from the plane even though Durning continued his disrupting and harassing conduct.

21   Delta further chose not to restrain Durning or move him to a seat far from Plaintiffs, even though Durning

22   continued his disrupting and harassing conduct.

23   32.   Upon landing in Orlando, Florida, Delta employees did not restrain Durning or arrange for

24   law enforcement to escort Durning off the aircraft before allowing passengers to deplane. Instead, they

25   allowed Durning to walk freely to row 12, where the Plaintiffs were sitting, where he continued to harass

26   them by leaning his body over them repeatedly in the direction of Plaintiff Z.B.

27   33.   After Durning exited the aircraft, unaccompanied by any Delta personnel, he stopped and

28   stood facing the gate to wait for Plaintiff Z.B. so that he could harass her once more. When he saw Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

Z.B. walking down the jet bridge, Durning grabbed his groin while looking directly at her. He also threw his phone to the ground and shouted as the Plaintiffs exited the jet bridge.

34.     Eventually, Durning was arrested at MCO for his actions. On June 22, 2023, Durning was convicted of a felony for his actions on the flight towards Z.B by a jury in federal court in the United States District Court for the Middle District of Florida.

35.     In the months since the harrowing ordeal, Plaintiff Z.B. has become withdrawn and her anxiety disorder has been severely exacerbated. She experiences frequent nightmares about the incident and does not want to sleep alone. Plaintiff Z.B. suffers from Post-Traumatic Stress Disorder and Depression, frequent panic attacks and bouts of nausea since the incident, and fears that a man will do something to her whenever she is out in public. She has developed a fear of flying, refuses to wear a bathing suit or shorts since the incident, and no longer hugs family members. She has become combative with her parents and has reacted negatively to her father touching her on the shoulder. She believes that she sees Durning when out in public, or on the television. She has developed tics including blinking excessively, clearing her throat repeatedly, and tensing her neck.

36.     Plaintiff Z.B. missed more than 40 days of school in the fall semester following the incident, needing private tutoring to catch up on the classes she missed. A formerly stellar student, Plaintiff Z.B. lost motivation and interest in school. She has been regularly seeing a school counselor and a professional therapist since the incident. Plaintiff Z.B. has also engaged in the self-destructive behavior of "cutting," including using scissors to cut her thigh, which is one of the places Durning put his hands during the assault.

37.     Plaintiff J.B. suffers from nightmares about the incident. Since the incident, he has become afraid of male strangers and his friends' fathers, crowds, and flights. He has become afraid of dark public spaces such as movie theaters and refuses to go to places outside of school or home without his mother. Plaintiff J.B. suffers from anxiety regarding his sister Plaintiff Z.B.'s safety, school, and changes to his routine, and refuses to change his clothes for physical education classes. He has required the support of a one-on-one aide at school since the incident.

38.     Plaintiff S.S. suffers from nightmares about the incident and suffers from anxiety regarding her children's safety and health, panic attacks, depression, and insomnia. Plaintiff S.S. struggles with

everyday tasks including going to work, and her marriage has suffered as a result of the emotional and mental impact of the incident and its aftermath.

## **FIRST CAUSE OF ACTION**

### **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

### **(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

39.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

40.     Delta solicits and operates a transportation service. Transportation is not incidental to Delta's business but, rather, is Delta's primary means of making money. As such, Delta is a common carrier under Civil Code § 2168 and Public Utilities Code § 211.

41.     A common carrier has a duty to use the utmost care and diligence for passengers' safety, must provide everything necessary for that purpose, and must exercise a reasonable degree of skill. Civil Code § 2100. At all material times, Delta owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual, and mental abuse posed by other passengers.

42.     At all relevant times, Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or was acting in the course and scope of such agency, partnership, joint venture, association and/or employment.

43.     The outrageous acts and/or omissions by Delta and Does 1 through 5 intentionally or recklessly caused severe emotional distress to Plaintiffs including, but not limited to, the following:

a.   when they allowed Durning to board the Flight in a visibly intoxicated state;

b.   when they allowed Durning to take his seat in a visibly intoxicated state;

c.   when they served Durning multiple drinks while Durning was in a visibly intoxicated state;

d.   when they failed to restrain Durning and allowed him to roam free in the cabin when directly warned by the Female Passenger of Durning's assault of Plaintiff Z.B. and herself;

e.   when they failed to restrain Durning and allowed him to roam free in the cabin when

directly warned by another passenger of Durning's continuing harassment of other passengers;

f.  when they failed to restrain Durning and allowed him to roam free in the cabin after having actual knowledge of Durning's continuing harassment of Plaintiffs Z.B., J.B., and S.S; and

g.  when they failed to escort or allow law enforcement to escort Durning off the aircraft and keep him away from Plaintiffs after having actual knowledge of Durning's assault on Plaintiff Z.B. and continuing harassment of Plaintiffs.

44.  Delta and Does 1 through 5 acted with intent or recklessness, knowing that Plaintiffs would likely endure severe emotional distress from an intoxicated passenger's outrageous conduct, especially given Plaintiffs' relative lack of power or control over their situation or ability to report a crime while passengers on the Flight.

45.  Delta and Does 1 through 5 acted with intent or recklessness, by failing to take adequate safety measures to protect Plaintiffs after receiving actual notice that Durning had sexually assaulted Plaintiff Z.B. and another passenger, knowing that Plaintiffs would likely continuously endure severe emotional distress from Durning's outrageous conduct, who was intoxicated, seated only two rows away from Plaintiffs, and unrestrained throughout the flight and when exiting the aircraft.

46.  As a direct and proximate result of the above acts and/or omissions by Delta and Does 1 through 5, Plaintiffs have suffered and continue to suffer substantial and permanent injuries, in an amount to be determined according to proof, including but not limited to: severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

47.  In subjecting Plaintiffs to the wrongful acts herein described Delta and Does 1 through 5 acted intentionally or recklessly with a willful and conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiffs are therefore entitled to the recovery

of punitive damages against Delta and Does 1 through 5, in an amount to be determined according to proof.

## SECOND CAUSE OF ACTION

## GROSS NEGLIGENCE

## (ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)

48.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 47 above as though fully set forth and brought in this cause of action.

49.     Delta is a common carrier under Civil Code § 2168 and Public Utilities Code § 211, and as such owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual and mental abuse posed by other passengers. The risk of in-flight sexual abuse, assault or harassment by passengers, including intoxicated passengers, was a foreseeable risk in light of the prevalence of such instances. The Plaintiffs were paying customers on the Flight and Delta owed them the highest degree of care in providing for their safety.

50.     At all relevant times, Does 1 through 5 were the agent, servant, member, partner, employee, associate, co-conspirator, co-joint venture, or alter-ego of Delta and/or was acting in the course and scope of such agency, partnership, joint venture, association and/or employment.

51.     It has been public knowledge for several years that in-flight sexual assault is a pervasive issue, and that such assaults are more likely to occur on red-eye flights. In June 2018, the FBI published an article commenting on the increase in reported cases of in-flight sexual assault.[1]  The FBI noted that there was a 66% increase in the number of such cases reported to the FBI from fiscal year 2014 to fiscal year 2017, and also that the "attacks generally occur on long-haul flights when the cabin is dark."[2]  The number of in-flight sexual assault investigations opened by the FBI increased again from 63 to 119 in the year 2019, showing a 89% increase from the year 2018.[3]

---

[1]   *Sexual Assault Aboard Aircraft: Raising Awareness About a Serious Federal Crime*, FBI News (Apr. 26, 2018), https://www.fbi.gov/news/stories/raising-awareness-about-sexual-assault-aboard-aircraft-042618.

[2]   *Id.*

[3]   Justin Gray, *Sexual Assaults on Airplanes on the Rise, FBI Warns*, WSB-TV (Feb. 3, 2020, 12:09 PM), https://www.wsbtv.com/news/2-investigates/sexual-assaults-airplane-rise-fbi-warns/HZRVB762XVGONC53ZFNSUCJXQA/.

52.     A report published by the International Air Transport Association reported 812 incidents of physical aggression, obscene or lewd physical contact, or conduct causing damage to aircraft fixtures or equipment during the year 2018.[4]

53.     News media have reported on multiple cases of passenger-on-passenger in-flight sexual assault for years,[5] including in particular cases of in-flight sexual assaults of children traveling unaccompanied by an adult or seated separately from their guardian.[6]

54.     In particular, Delta knew numerous in-flight sexual assaults that occurred on flights that it operated, including, but not limited to, the following instances. In 2016, an intoxicated man performed a sex act on himself and sexually assaulted a woman sitting next to him on a flight operated by ExpressJet, which is operated by Delta.[7]  In 2017, a man sexually assaulted a female passenger on a Delta flight from Charlottesville, Virginia to Atlanta, Georgia.[8]  In 2018, a 23-year-old woman was sexually assaulted by

---

[4]  Int'l Air Transp. Ass'n, *Safety Report 2018* at 111-12 (Apr. 2019), https://www.iata.org/contentassets/4d18cb077c5e419b8a888d387a50c638/iata-safety-report-2018.pdf.

[5]  *See, e.g.*, Julia Marnin, *Sleeping woman wakes up twice to passenger groping her on red-eye flight to NJ, feds say*, Miami Herald (Sept. 4, 2023, 2:53 PM), https://www.miamiherald.com/news/nation-world/national/article278951299.html; *Delta passenger sues airline, claims crew didn't detain passenger who sexually assaulted her on flight*, Fox News (Sept. 28, 2018, 10:12 AM), https://www.foxnews.com/travel/delta-passenger-sues-airline-claims-crew-didnt-detain-passenger-who-sexually-assaulted-her-on-flight; Allison Dvaladze, *Airline industry treats sexual assaults in the skies like an inconvenience, not a crime*, USA Today (Apr. 1, 2019, 6:00 AM), https://www.usatoday.com/story/opinion/voices/2019/04/01/sexual-assault-airlineflight-elaine-chaotrump-boeing-column/3312204002/; Christopher Mele, *Sexual Assault on Flights: Experts Recommend Ways to Stay Safe and Combat It*, N.Y. Times (Mar. 23, 2019), https://www.nytimes.com/2019/03/23/travel/airline-flights-sexual-assault.html; David Oliver, *Passenger indicted for alleged mid-flight sexual assault of 19-year-old woman*, USA Today (May 21, 2019, 3:50 PM), https://www.usatoday.com/story/travel/flights/2019/05/21/united-airlines-passengerallegessexual-assault/3751023002/.

[6]  Robert Arnold, *Houston area teen reports being molested on flight to California*, Click2Houston (June 6, 2023, 9:53 AM), https://www.click2houston.com/news/investigates/2023/06/06/houston-area-teen-reports-being-molested-on-flight-to-california/; Amy Clancy, *Seattle teen: United Airlines 'negligent' for in-flight sexual assault*, Kiro7 (May 21, 2019, 11:35 PM), https://www.kiro7.com/news/local/tonight-at-5-30-seattle-teen-united-airlines-negligent-for-in-flight-sexual-assault/950947481/; Michael Miller, *'This was 30 minutes of hell for this lady': Unaccompanied minor groped on flight*, The Washington Post (June 20, 2016, 6:33 AM), https://www.washingtonpost.com/news/morning-mix/wp/2016/06/20/this-was-30-minutes-of-hell-for-this-young-lady-unaccompanied-minor-groped-on-flight/.

[7]  Oralandar Brand-Williams, *Woman sues Delta Airlines over sex assault on flight*, The Detroit News (June 13, 2017, 3:28 PM), https://www.detroitnews.com/story/news/local/wayne-county/2017/06/13/passenger-sues-delta-airlines-sex-assault/102813688/.

[8]  Raisa Habersham, *FBI: Man threw pretzel bag, groped woman on Delta flight to Atlanta*, The Atlanta Journal-Constitution (Mar. 14, 2018), https://www.ajc.com/news/crime--law/fbi-man-threw-pretzel-bag-groped-woman-delta-flight-atlanta/s6Ock8D4UFUtD4JVf5xgqM/.

---

13

an intoxicated male passenger on a Delta flight from Chicago, Illinois to Los Angeles, California.[9]  In 2019, a woman was sexually assaulted on a Delta flight from Atlanta, Georgia to Germany by a neighboring passenger while she was sleeping.[10]  In 2021, a man sexually assaulted a 19-year-old woman sitting next to him on a Delta flight from the Netherlands to Detroit, Michigan, while she was sleeping and the cabin lights were dimmed.[11]

55.     As an air carrier, Delta and Does 1 through 5 violated laws, regulations, and policies by including, but not limited to, the following:

    a.   allowing Durning to board the Flight in a visibly intoxicated state;

    b.   allowing Durning to take his seat in a visibly intoxicated state; and

    c.   serving Durning multiple drinks while Durning was in a visibly intoxicated state.

56.     Delta and Does 1 through 5 breached their duties as a common carrier and violated that heightened degree of care owed to Plaintiffs by including, but not limited to, the following:

    a.   failing to have or enforce adequate policies and procedures to prevent and properly respond to in-flight sexual assaults;

    b.   allowing Durning to board the Flight in a visibly intoxicated state;

    c.   allowing Durning to take his seat in a visibly intoxicated state;

    d.   serving Durning multiple drinks while Durning was in a visibly intoxicated state;

    e.   failing to act adequately when directly warned by the Female Passenger of Durning's assault of Plaintiff Z.B. and herself;

    f.   failing to act adequately when directly warned by another passenger of Durning's continuing harassment of other passengers; and

---

[9]   Ewan Palmer, *Delta Passenger Says She Was Sexually Assaulted on Flight and Given $200 Coupon to Make Up For It,* Newsweek (July 24, 2018, 11:15 AM), https://www.newsweek.com/delta-passenger-says-she-was-sexually-assaulted-flight-and-given-200-coupon-1039773.

[10]   Nikki McGee, *Murfreesboro couple sues Delta Airlines after alleged in-flight sexual assault,* WKRN.com (Apr. 29, 2021, 10:31 PM), https://www.wkrn.com/news/local-news/murfreesboro-couple-sues-delta-airlines-after-alleged-in-flight-sexual-assault/.

[11]   Derick Hutchinson, *Man who sexually assaulted woman in middle seat of Delta flight to Detroit claims he was asleep, feds say,* Click On Detroit (Apr. 20, 2022, 8:00 AM), https://www.clickondetroit.com/news/local/2022/04/20/man-who-sexually-assaulted-woman-in-middle-seat-of-delta-flight-to-detroit-claims-he-was-asleep-feds-say/.

g.  failing to act adequately after having actual knowledge of Durning's continuing harassment of Plaintiffs Z.B., J.B., and S.S.

57.     The above-mentioned actions and/or omissions by Delta and Does 1 through 5, when viewed objectively, involved an extreme degree of risk and constituted an extreme departure from the ordinary standard of conduct, considering the probability and magnitude of the potential harm to others.

58.     Delta and Does 1 through 5 had actual, subjective awareness of this risk, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs. The gross negligence of Delta and Does 1 through 5, especially by ignoring its own policies and credible reports that Durning had sexually assaulted passengers including a minor child, and by failing to take meaningful steps to protect Plaintiffs, was a proximate cause of the assaults and harassment that Plaintiffs suffered and of the damages and injuries alleged herein.

59.     The above acts and/or omissions by Delta and Does 1 through 5 were a proximate cause of the physical damage, severe emotional distress, and physical manifestations of severe emotional distress that Plaintiffs Z.B., J.B. and S.S. have suffered and continue to suffer in an amount to be determined according to proof.

60.     Plaintiffs J.B. and S.S., the brother and mother of Plaintiff Z.B., were in the same airplane cabin as Plaintiff Z.B., seated next to Plaintiff Z.B., or walking next to Plaintiff Z.B. during the injuries that Plaintiff Z.B. suffered. Plaintiffs J.B. and S.S. were aware that Delta's grossly negligent and careless injury-producing conduct was causing injury to Plaintiff Z.B. because they were alerted to Durning's conduct by the Female Passenger, and because they witnessed Durning's subsequent conduct after he was moved to row 10.

61.     As a direct and proximate result of witnessing the injury to Plaintiff Z.B. caused by the grossly negligent and careless conduct of Delta and Does 1 through 5, and because they also received and observed taunts and sexual gestures when they were sitting next to Plaintiff Z.B., Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

62.     As a result of this gross negligence, Plaintiffs are entitled to and seek exemplary damages in an amount to be determined according to proof.

15

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

63.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 62 above as though fully set forth and brought in this cause of action.

64.     As a common carrier, Delta owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual and mental abuse posed by other passengers.

65.     The above-mentioned acts and/or omissions by Delta and Does 1 through 5 constituted a breach of that duty.

66.     As a direct, legal, and proximate result of the acts and/or omissions by Delta and Does 1 through 5, Plaintiffs Z.B., J.B. and S.S. suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

67.     Plaintiffs J.B. and S.S., the brother and mother of Plaintiff Z.B., were in the same airplane cabin as Plaintiff Z.B., seated next to Plaintiff Z.B., or walking next to Plaintiff Z.B. during the injuries that Plaintiff Z.B. suffered. Plaintiffs J.B. and S.S. were aware that Delta's negligent injury-producing conduct was causing injury to Plaintiff Z.B. because they were alerted of Durning's conduct by the Female Passenger, or because they witnessed Durning's subsequent conduct after he was moved to row 10.

68.     As a direct, legal, and proximate result of witnessing the injury to Plaintiff Z.B. caused by the negligent conduct of Delta and Does 1 through 5, Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

///

///

**FOURTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS AGAINST DELTA AND DOES 1 THROUGH 5)**

69.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 68 above as though fully set forth and brought in this cause of action.

70.     Delta and Does 1 through 5 owed a heightened duty as a common carrier to Plaintiffs and other passengers to provide a safe flight free from the risk of verbal, physical, sexual, and mental abuse posed by other passengers.

71.     While on board the Flight, the Plaintiffs had limited mobility, were unable to escape from Durning, or report a crime to the authorities on their own.

72.     Delta and Does 1 through 5 knew or should have known that Plaintiffs who experienced and witnessed in-flight sexual assault and were treated poorly or inadequately in the aftermath would experience severe emotional distress.

73.     Delta and Does 1 through 5 could reasonably foresee that their actions and/or omissions would cause severe emotional distress to Plaintiffs.

   a.   Delta and Does 1 through 5 could reasonably foresee that allowing Durning, a visibly intoxicated passenger, to board the aircraft and then providing Durning with more alcoholic beverages while seated next to an unaccompanied child created a heightened risk of sexual assault which Delta and Does 1 through 5 failed to mitigate or address.

   b.   After being notified of the assault of Plaintiff Z.B., Delta and Does 1 through 5 failed to take adequate measures that would prevent Durning from continuing to harass Plaintiff Z.B, Plaintiff J.B., and Plaintiff S.S.

   c.   Delta and Does 1 through 5 could reasonably foresee that after Plaintiff Z.B. was sexually assaulted on the Flight, seating Durning only a few feet away from Plaintiffs would further cause Plaintiffs severe emotional distress.

   d.   Delta and Does 1 through 5 could reasonably foresee that Durning, who remained intoxicated and unrestrained for the rest of the Flight, would likely cause harm to Plaintiffs and other passengers.

17

74.     Through the above-described actions and/or omissions, Delta and Does 1 through 5 failed to exercise utmost care and negligently caused severe emotional distress to Plaintiffs.

75.     As a direct, legal, and proximate result of the acts and/or omissions by Delta and Does 1 through 5, Plaintiffs Z.B., J.B. and S.S. suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

76.     Plaintiffs J.B. and S.S are immediate family members of Plaintiff Z.B. They were also passengers on the Flight located just a few feet away from Plaintiff Z.B. during the assault of Plaintiff Z.B. As a direct and proximate result of witnessing the injury to Plaintiff Z.B. caused by the negligent conduct of Delta and Does 1 through 5, Plaintiffs J.B. and S.S. suffered and continue to suffer substantial and permanent injuries, including severe emotional distress and physical manifestations of severe emotional distress, including anxiety, humiliation, loss of enjoyment of life, fear of flying, inability to perform daily activities, and other physical and emotional injuries in an amount to be determined according to proof.

77.     As a direct, legal, and proximate result of the negligent conduct by Delta and Does 1 through 5 that allowed Durning to continue to harass Plaintiffs J.B. and S.S., Plaintiffs J.B. and S.S. have suffered and continue to suffer severe emotional distress and physical manifestations of severe emotional distress, in an amount to be determined according to proof.

## FIFTH CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

### (ALL PLAINTIFFS AGAINST DELTA)

78.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 77 above as though fully set forth and brought in this cause of action.

79.     Delta's conduct as described herein constitutes a "business practice" under the Business & Professions Code, Section 17200, et seq. ("Section 17200").

80.     Under California law, Section 17200 "borrows" violations of other laws, including common law, and treats them as unlawful practices independently actionable under Section 17200.

81.     Delta has engaged in unlawful conduct within the meaning of Section 17200 by virtue of Delta's acts and omissions which violate common law and constitute negligence, gross negligence, negligent infliction of emotional distress and/or intentional infliction of emotional distress. As described herein, those acts and omissions include but are not limited to, allowing a visibly intoxicated person to board the plane, allowing a visibly intoxicated person to take his seat on the plane, continuing to serve a visibly intoxicated person alcohol during the flight, forcing Plaintiff Z.B., a minor, to stay in the seat where the assault took place after they had knowledge of the assault, sitting Durning near Plaintiff Z.B., his victim, and her family and not moving him to the back of the plane, refusing to control or restrain Durning and allowing him to roam free in the cabin after being told of his sexual assault of a minor, refusing to control or restrain Durning and allowing him to roam free in the cabin after learning of Durning's continuing harassment of Plaintiffs and other passengers, allowing Durning to retrieve his luggage from the compartment directly above Plaintiffs while they were forced to stay in their seats and endure Durning's further harassment of them, and failing and/or refusing to escort or allow law enforcement to escort Durning off the aircraft and keep him away from Plaintiffs thereby providing another opportunity for Durning to wait for his victim and harass her and Plaintiff J.B. and Plaintiff S.S. once more.

82.     As a direct and foreseeable result of Delta's violation of Section 17200, Plaintiffs have suffered and continue to suffer economic harm and substantial irreparable harm as described herein. Plaintiffs are therefore entitled to relief.

## **SIXTH CAUSE OF ACTION**

### **ASSAULT**

### **(PLAINTIFF Z.B. AGAINST DURNING)**

83.     Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

84.     Durning, with intent to cause harmful or offensive contact, touched Plaintiff Z.B. in the lower leg, upper thigh, vaginal area, and breasts.

85.     Plaintiff Z.B. reasonably believed that she was about to be touched in a harmful offensive manner, in light of Durning calling her "honey boo," and telling her that he would take her to Texas and that she would never see her family again, and in light of each prior instance of harmful or offensive contact by Durning.

86.     Plaintiff Z.B. did not consent to Durning's conduct.

87.     As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks,  loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.  In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

## SEVENTH CAUSE OF ACTION

### SEXUAL BATTERY (CIVIL CODE § 1708.5)

### (PLAINTIFF Z.B. AGAINST DURNING)

88.     Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

89.     Durning touched Plaintiff Z.B. in the groin, vaginal area, and breasts.

90.     Durning committed the acts set forth herein with the intent to cause harmful or offensive contact with an intimate part or parts of Plaintiff Z.B.'s person and that would offend a reasonable sense of personal dignity. The acts by Durning did in fact cause a harmful or offensive contact with Plaintiff Z.B.'s person that would offend a reasonable person in Plaintiff Z.B.'s situation.

91.     Plaintiff Z.B. did not give consent to Durning's conduct.

92.     As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to

COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.:

proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks,  loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

93.     In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

## EIGHTH CAUSE OF ACTION

### BATTERY

### (PLAINTIFF Z.B. AGAINST DURNING)

94.     Plaintiff Z.B. re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

95.     Durning touched Plaintiff Z.B. in the leg, groin, vaginal area, and breasts.

96.     Durning committed the acts set forth herein with the intent to cause a harmful or offensive contact with Plaintiff Z.B.'s person and that would offend a reasonable sense of personal dignity. Further, said acts by Durning did cause a harmful or offensive contact with Plaintiff Z.B.'s person that would offend a reasonable person in Plaintiff Z.B.'s situation.

97.     Plaintiff Z.B. did not consent to the touching.

98.     Plaintiff Z.B. was harmed by Durning's inappropriate and wrongful conduct.

99.     As a direct, legal, and proximate result of the acts of Durning, Plaintiff Z.B. suffered and continues to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks,  loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

100.     In subjecting Plaintiff Z.B. to the wrongful acts herein described, Durning acted willfully

and maliciously with the intent to harm Plaintiff Z.B. and with a willful and conscious disregard of Plaintiff Z.B.'s rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiff Z.B. is therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

**NINTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(ALL PLAINTIFFS AGAINST DURNING)**

101.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in paragraphs 1 through 38 above as though fully set forth and brought in this cause of action.

102.    Durning intentionally touched Plaintiff Z.B. on her lower legs, thigh, groin, vaginal area, and breasts. Durning pleasured himself over his clothing both while forcibly touching Plaintiff Z.B. on the Flight and while looking at Plaintiff Z.B. as she and the other Plaintiffs were disembarking from the aircraft at MCO.

103.    Durning pleasured himself over his clothing while leering at Plaintiffs while on the Flight. Durning intentionally verbally harassed Plaintiffs on multiple occasions during the Flight and after it landed. Durning grabbed his genitals and shook them at Plaintiffs and taunted them while on the Flight.

104.    Durning's conduct was extreme, outrageous, and had a severe and traumatic effect upon the mental and emotional tranquility of Plaintiffs.

105.    As an actual and proximate result of the intentional and malicious acts of Durning, Plaintiffs suffered and continue to suffer the following general and special damages, in an amount to be shown according to proof, including but not limited to: physical injuries, shock, severe emotional distress, including but not limited to, anxiety, depression, Post-Traumatic Stress Disorder, panic attacks, loss of enjoyment of life, fear of flying, nightmares and inability to perform daily activities, and physical manifestations of severe emotional distress, such as physical injuries from self-destructive behavior.

106.    In subjecting Plaintiffs to the wrongful acts herein described, Durning acted willfully and maliciously with the intent to harm Plaintiffs and with a willful and conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression under Civil Code § 3294. Plaintiffs are therefore entitled to the recovery of punitive damages against Durning, in an amount to be determined according to proof.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray:

1.     For past, present, and future non-economic damages, in an amount to be determined at trial;

2.     For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages and others, in an amount to be determined at trial;

3.     For exemplary and punitive damages in an amount deemed sufficient by the trier of fact to punish, deter, and make an example of Defendants and to be determined at the time of trial;

4.     For costs and expenses of suit, including expert witness fees;

5.     For reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and/or any other applicable provision providing for attorneys' fees;

6.     For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law; and

7.     For any other equitable and further relief as the Court may deem proper.

**REQUEST FOR JURY TRIAL**

Plaintiffs Z.B., J.B., and S.S. hereby demand a trial by jury on all issues.

Dated: January 30, 2024          Respectfully submitted,
                                 **LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**

                                 By:  /s/ Jessica R. Lobis Buckwalter
                                 Jessica R. Lobis Buckwalter (SBN 199200)
                                 Adam Kaufmann (*pro hac vice* admission pending)
                                 Li Jiang (SBN 292940)

                                 **AGNIFILO LAW GROUP, APC**

                                 By:  /s/ Karen Agnifilo
                                 Karen Agnifilo (*pro hac vice* admission pending)

                                 **DE CASTRO LAW GROUP, P.C.**

                                 By:  /s/ José-Manuel A. de Castro
                                 José-Manuel A. de Castro (SBN 213769)

                                 *Attorneys for Plaintiffs*

23